UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL LTD., LLC, and REEBOK INTERNATIONAL LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>AUTRY INTERNATIONAL S.r.l, and AUTRY USA, LLC,<br><br>Defendants. | Case No. 1:23-cv-10966-RGS<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFFS REEBOK INTERNATIONAL LTD., LLC, AND REEBOK INTERNATIONAL LIMITED'S OPPOSITION TO AUTRY USA, LLC'S MOTION TO SUSPEND PROCEEDINGS PENDING PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

Pursuant to District of Massachusetts Local Rule 7.1, and in accordance with the timing set by the Court, Plaintiffs Reebok International Ltd., LLC and Reebok International Limited ("Reebok"), through counsel, hereby respectfully respond in opposition to Defendant, Autry USA, LLC's ("Autry USA") Motion to Suspend Proceedings ("Motion to Stay") Pending Resolution of Plaintiffs' Motion to Disqualify Counsel for Defendants ("Motion to Disqualify").[1] The reasons and authorities supporting this opposition are set forth herewith:

1. Despite claiming no knowledge until June 9, 2023, of the serious conflict of interest that bars Hogan Lovells US LLC ("Hogan Lovells") from representing the Defendants Autry International S.r.l. and Autry USA, LLC (collectively, "Autry") in this case, Autry and Hogan Lovells have been on notice of these precise issues for nearly three months.

---
[1] ECF. No. 33.

1

2. Specifically, on March 10, 2023, Reebok, through counsel, sent Autry a cease-and-desist letter, detailing Autry's willful infringement of Reebok's intellectual property rights and requesting that Autry cease those activities.

3. On March 21, 2023, Reebok's counsel was contacted by Legance – Avvocati Associati ("Legance"), an Italian law firm, confirming receipt of the cease-and-desist letter.

4. Three days later, on March 24, 2023, Legance indicated for the first time that Hogan Lovells would be assisting as co-legal counsel with Legance on this matter.

5. Having had a significant client-attorney relationship with Hogan Lovells for many years that ended only recently, Reebok, through counsel, responded to Legance on March 27, 2023, raising the serious concerns that underlie Reebok's pending Motion to Disqualify Hogan Lovells as counsel in this matter, stating in relevant part: "We also need to notify you that Hogan Lovells has for many years advised and represented Reebok on intellectual property matters relating to the Reebok shoes, ***including intellectual property rights at issue in this matter***." *See* attached Ex. 1. (A true and accurate copy of correspondence between counsel for Reebok and Legance from March 2023).

6. Reebok's counsel further explained that this prior representation created "a clear ethical conflict precluding Hogan Lovells from accepting any representation adverse to Reebok on these issues" and that Reebok "expect[s] that Hogan Lovells has advised you as to this conflict and that you have found new US counsel, but please confirm." *Id.*

7. Four days later, on March 31, 2023, Reebok's counsel was contacted by Hogan Lovells, explaining that they, along with Legance, represented Autry, and that Autry would not cease its infringing actions in response to Reebok's concerns.

4856-1144-3563, v. 2

8. Due to Autry's decision to ignore Reebok's intellectual property rights, Reebok had no choice but to seek judicial intervention and therefore initiated this lawsuit against Autry, on May 2, 2023. (ECF. No. 1).

9. Autry USA was properly served with the Complaint on May 5, 2023, via service on its registered agent. (ECF. No. 6).

10. On May 9, 2023, and consistent with Reebok's position that Hogan Lovells is disqualified from being adverse to Reebok, counsel for Reebok contacted Autry's Italian counsel, informing them that Reebok had initiated the U.S. litigation and inquiring whether the Italian Autry would waive formal service. In this correspondence, Reebok explicitly stated for the second time that Hogan Lovells' prior representation of Reebok for many years on the intellectual property at issue created a conflict of interest that precluded the firm from representing Autry in this matter. *See* attached Ex. 2  (A true and accurate copy of correspondence from counsel for Reebok to Legance dated May 9, 2023). ("Please note that, given that the law firm of Hogan Lovells is conflicted out from being adverse to Reebok on this matter, we are not including them on this email.").

11. On May 16, 2023, Hogan Lovells contacted Reebok through counsel, stating that Hogan Lovells would be representing Autry in this lawsuit, and that all future correspondence regarding this proceeding was to be directed at Hogan Lovells. Acknowledging the existence of Reebok's repeated statements raising the conflict of interest, Hogan Lovells nevertheless claimed that it had "thoroughly investigated and reviewed this matter and have concluded that no such conflict [of interest] exists." *See* attached Ex. 3.  (A true and accurate copy of correspondence from Hogan Lovells to counsel for Reebok dated May 16, 2023).

12. On May 19, 2023, counsel for Autry met and conferred with counsel for Reebok regarding Autry USA's proposed Motion to Extend the time to respond to Reebok's Complaint, Hogan Lovells' proposed Motions for Admission *Pro Hac Vice*, as well as Reebok's continued requests for Hogan Lovells to accept service of process on behalf of Autry Italy. During that call, counsel for Reebok explained for the third time that serious conflicts of interest existed that would preclude Hogan Lovells from being adverse to Reebok on this matter. Reebok's counsel therefore explained that Reebok could not consent to Hogan Lovells' pro hac vice applications.

13. In response, counsel from Hogan Lovells acknowledged Reebok's position that it had serious concerns and therefore could not consent to the pro hac vice applications. Notably, counsel did not express any confusion as to what Reebok's concerns were or seek any clarification regarding them.

14. Reebok's counsel closed the May 19 call by informing Hogan Lovells that Reebok was preparing and would be filing the disqualification motion that is now pending.

15. On June 9, 2023, Reebok filed its Motion to Disqualify Hogan Lovells from representing Autry in connection with these proceedings, detailing Reebok's continued assertions of Hogan Lovells' serious conflict of interest. (ECF. Nos. 27-30).

16. As the above timeline confirms, Autry and Hogan Lovells have known for the last approximately three months that Hogan Lovells has a conflict of interest that bars it from representing Autry in this case.

17. Autry and Hogan Lovells nevertheless persisted with their plan for Hogan Lovells to represent Autry in this case, claiming that a thorough investigation had already been done.

18. On June 12, 2023, Hogan Lovells contacted Reebok's counsel for the first time, indicating that Autry wished to extend its deadline to answer the disqualification motion by seven days—which would mean that the deadline to respond to the disqualification motion would now fall *after* Autry USA's already extended deadline to answer the complaint.

19. In the same correspondence, Hogan Lovells indicated that it would ask the Court to stay all deadlines in this case pending resolution of the disqualification motion and further asked for Reebok to provide its position on that stay request no more than 24 hours later. *See* attached Ex. 4. (A true and accurate copy of correspondence from Hogan Lovells to counsel for Reebok dated June 12, 2023).

20. Reebok responded on June 13, 2023, indicating that Reebok could not agree to the stay, given that Autry's willful infringement of Reebok's intellectual property rights is ongoing and therefore continues to cause irreparable harm to Reebok daily.

21. Autry therefore filed on June 14, 2023, its opposed Motion to Stay the Proceedings Pending Resolution of Plaintiffs Motion to Disqualify. (ECF. No. 33).

22. Citing no case law, let alone the standard for stay requests, Autry's motion argued (incorrectly) that a stay is needed in order to allow Hogan Lovells time to conduct "additional investigation" into its prior representation of Reebok because "Reebok [allegedly] did not fully disclose its specific alleged factual bases for its impending Motion to Disqualify until its June 9, 2023 filing." (ECF. No. 33, ¶¶ 12-13). Autry further argued that it should be allowed to bar Reebok from moving forward with the prosecution of its case while Autry continues to infringe Reebok's rights unchecked because Autry will ultimately have to retain counsel other than Hogan Lovells. *Id.* ¶ 15.

23. These arguments fail to support Autry's stay request for at least three reasons. **First**, there is no question that Autry has known that Reebok would challenge Hogan Lovells' representation for nearly three months. There is no question that Autry had that knowledge pre-suit. And there is no question that Autry should not have proceeded with Hogan Lovells as its US representation, or, at a minimum, should have already identified replacement counsel. Simply put, Autry and Hogan Lovells understood the risk of proceeding together in this matter and, ignoring that risk, nevertheless chose to proceed in that manner, thereby unnecessarily creating the issue now before the Court. They should not be able to use Reebok's disqualification motion as a way to defeat Reebok's right to seek timely relief to stop Autry's willful infringement. *Cf. Allstate Insur. Co. v. Belsky*, Case No. 2:15-cv-02265-MMD-CWH, 2017 WL 9434415, at *1 (D. Nev. June 22, 2017) (denying a motion to stay filed in connection with a disqualification motion, noting concerns about tactical delays).

24. **Second**, Autry's arguments that a stay is needed to allow it to investigate adequately the clear conflict of interest that precludes Hogan Lovells' involvement in this case is both a non-sequitur and incorrect. The remedy when a party needs more time to investigate an issue is an extension of time to respond, not a stay of the entire case. Regardless, Autry has been on notice of the conflict since at least as early as March 31. Hogan Lovells has been on notice for at least the same amount of time, if not longer. In fact, Hogan Lovells has independent access to the same engagement letter cited in Reebok's papers. It also has access to files and other information showing the scope of the prior representation, including that it involved giving advice on the same trademarks at issue in this case. Presumably, that letter and those files were reviewed as part of the claimed prior "thorough

investigation", which, knowing it had a significant client-attorney relationship with Hogan Lovells for many years that ended only recently, was part of Hogan Lovells professional obligations to complete before it even committed to represent Autry in this matter.

25. **Third and finally,** although the power to grant a stay is part of the Court's inherent authority to control and manage its docket, stays are not automatic, including in the context of a disqualification motion. *See Belsky*, 2017 WL 9434415, at *1 (noting there is no "*per se* rule that a pending motion for disqualification warrants a general stay of all proceedings"). Instead, district courts within this Circuit consider a number of factors before granting a stay, with the most important factor being "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 274 (D. Mass. 2016) (quoting *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. CIV.A. 13-12418-DJC, 2014 WL 4804738, at *8 (D. Mass. Sept. 25, 2014)); *see also, e.g.*, *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 350 (D. Mass. 2011) (stating that the "most important factor is whether and to what extent a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"); *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-CV-12029-ADB, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019) (discussing that the thrust of the third factor's prejudice analysis is harm to the non-moving party). The "moving party [therefore] bear[s] the burden of showing that the non-moving party will not be prejudiced by a stay." *ADA Sols.*, 826 F. Supp. 2d at 350.

26. As noted above, Autry does not even cite—let alone attempt to meet its burden to satisfy—the stay standard or the specific requirement that the stay not prejudice Reebok. This is not surprising.

4856-1144-3563, v. 2

27. Unlike cases that seek to redress only past harms, trademark infringement and unfair competition claims present issues of not just ongoing harm, but ongoing irreparable harm due to infringement that continues during pendency of the case. 15 U.S.C. § 1116 (irreparable harm presumed in trademark infringement and unfair competition cases); *see also, e.g.*, *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated."). Recognizing these issues, courts often deny stay requests in cases of ongoing infringement between direct competitors because of prejudice to the intellectual property owner, even where the stay is being sought to allow other proceedings that may narrow the issues. *See, e.g.*, *Shurtape Techs. LLC v. 3M Co.*, Civ. No. 5:11cv17-RLV, 2013 WL 789984, at *2 (W.D.N.C. Mar. 4, 2013); *Koninklijke Philips N.V.*, 167 F. Supp. 3d at 275.  Applying those principles here—where the stay is not being sought because there is a chance to narrow the issues in the case but because Autry proceeded with Hogan Lovells as counsel despite knowing for months of the conflict—the same result should occur.  The stay should be denied because Autry is not just directly competing with Reebok in the same market but is actively targeting Reebok's actual customers using trademarks that are intentionally confusingly similar to those owned by Reebok. *See, e.g.*, *Shurtape*, 2013 WL 789984, at *2 (finding prejudice factor favored stay where parties were direct competitors and IPR proceeding leading to stay request would not dispose of all issues).  Reebok therefore respectfully requests the Court deny Autry's request for an indefinite stay as the Court resolves the disqualification motion.

28. The stay request should also be denied for the additional reason that it allows Autry to benefit from its decision to move forward with conflicted counsel. Specifically, although Reebok shares and appreciates the Court's concerns that Hogan Lovells' involvement in the preparation of Autry USA's answer implicates the conflict concerns in this case, Reebok recognizes the reality that Hogan Lovells has already provided substantive advice to Autry in response to Reebok's cease-and-desist letter, and that Hogan Logans has also undoubtedly already provided guidance and strategy on Autry USA's answer, given that the response deadline is seven days away. In other words, Hogan Lovells has already repeatedly advised Autry generally on its defense of this case and likely specifically on its responsive pleading, with full knowledge of Reebok's concerns and objections. There is no world in which Autry will simply "forget" that advice because new counsel is engaged. Furthermore, a stay would not preclude Hogan Lovells from continuing to offer Autry advice, including advice based on knowledge from its prior work for Reebok. As a result, a stay in no way protects Reebok from the harm caused by Hogan Lovells' conflict of interest that prompted the disqualification motion. But it does provide tactical benefit to Autry, who can use this as another way to prolong resolution of this case. *See, e.g.*, *Shurtape*, 2013 WL 789984, at *2 (finding prejudice factor weighed against a stay where, among other things, "delay in this instance clearly favors [the moving party], not the [non-moving party]"); *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-cv-242, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008) (prejudice factor weighs against a stay where "the potential delay for an indefinite period would likely prejudice [the non-moving party]").

29. Accordingly, to avoid a situation where Autry benefits from Hogan Lovells' disqualification, the Court should deny the motion and specifically decline to stay the case or further extend Autry USA's June 26 answer deadline.

**WHEREFORE**, Reebok respectfully requests that the Court deny the motion and specifically decline to stay the case or further extend Autry USA's June 26 answer deadline.

Dated: June 19, 2023

Respectfully Submitted,

REEBOK INTERNATIONAL LTD., LLC, and REEBOK INTERNATIONAL LIMITED,

By their attorneys,

*/s/ Lucy Jewett Wheatley*
John J. Tumilty (BBO # 560017)
Paige Zacharakis (BBO # 699108)
**MORSE, BARNES-BROWN & PENDLETON, P.C.**
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Telephone: (781) 622-5930
Fax: (781) 622-5933
jtumilty@morse.law
pzacharakis@morse.law

Lucy J. Wheatley (*admitted pro hac vice*)
Amanda L. DeFord (*admitted pro hac vice*)
Matthew G. Rosendahl (*admitted pro hac vice*)
**McGuireWoods LLP**
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
adeford@mcguirewoods.com
mrosendahl@mcguirewoods.com

Luigi Aletto (*admitted pro hac vice*)
**McGuireWoods LLP**
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102

10

Tel: (703) 712-5000<br>
Fax: (703)712-5050<br>
laletto@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2023, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

<i>/s/ John J. Tumilty</i><br>
John J. Tumilty