UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-10966-RGS

REEBOK INTERNATIONAL LTD., LLC,
and REEBOK INTERNATIONAL LIMITED

v.

AUTRY INTERNATIONAL S.R.L.
and AUTRY USA, LLC

MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION TO DISQUALIFY

September 7, 2023

STEARNS, D.J.

Plaintiffs Reebok International Ltd., LLC, and Reebok International Limited (collectively, Reebok) move to disqualify Hogan Lovells[1] as counsel for defendants Autry International S.r.l and Autry USA, LLC (collectively, Autry). Reebok contends that Hogan Lovells's prior representation of Reebok in litigation involving the European counterparts of the asserted trademarks creates a conflict of interest that precludes representation of

---

[1] Hogan Lovells is an international legal practice comprising Hogan Lovells US LLP and Hogan Lovells International LLP. Because the companies hold themselves out as one unitary firm, the court will refer to them collectively and interchangeably as Hogan Lovells.

Autry in this action. For the following reasons, the court will allow the motion.

## DISCUSSION

Because courts are generally loath to "interrupt the relationship between a lawyer and her client," *Adoption of Erica*, 426 Mass. 55, 58 (1997), disqualification of a party's chosen counsel is a "drastic measure" not to be undertaken lightly, *Masiello v. Perini Corp.*, 394 Mass. 842, 848 (1985), quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Reebok, as the moving party, bears the heavy burden of showing its necessity.

Reebok relies on Massachusetts Rule of Professional Conduct 1.9(a), which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

*See also* L.R. 83.6.1(a) (adopting the Massachusetts Rules of Professional Conduct for practice before the District of Massachusetts). The Supreme Judicial Court has articulated a two-step test to determine whether disqualification is appropriate under the Rule. "First, the current representation must be 'adverse' to the interests of the former client."

*Adoption of Erica*, 426 Mass. at 61. "Second, the matters of the two representations must be 'substantially related.'" *Id.* The parties' dispute concerns the second element, namely, whether the core subject areas of the two representations are substantially related.

As relevant here, matters are "substantially related" if there "is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Mass. R. Prof. Conduct 1.9 cmt. 3. To determine whether there is a substantial risk that confidential factual information obtained by Hogan Lovells in its prior representation of Reebok would materially advance Autry's position in this matter, the court must "examine[] the overlap and similarity between" the matters, *Slade v. Ormsby*, 69 Mass. App. Ct. 542, 547 (2007), and the extent to which confidential information bearing on the current representation was disclosed in the prior representation, *see Wessell v. Mink Brook Assocs., Inc.*, 87 Mass. App. Ct. 747, 752 (2015); *see also Baker v. Cox*, 974 F. Supp. 73, 76-77 (D. Mass. 1997) (analyzing whether an attorney had access to confidential client information while previously working as an intern for the adverse party's counsel).

3

At the outset, the court rejects the notion that, because trademarks are territorial, any prior representation could only be substantially related to this matter if it involved a United States (US) registration. The underlying legal framework governing trademark protection is generally consistent across countries.[2,3] Given the extensive "overlap and similarity" in operating law, *see Slade*, 69 Mass. App. Ct. at 547, it is possible that confidential factual

---

[2] Both the European and US systems are based on a registration principal. A mark registered with the US Patent Office (USPTO) is valid throughout the territorial United States. A mark registered with the European Patent Office (EPO) is similarly valid and enforceable in all European Union (EU) member states and the eleven other European countries that are co-signatories of the European Patent Convention (including the United Kingdom (UK) post-Brexit). Both systems employ the World Intellectual Property Organization's Nice System of Classification of Goods and Services. Both use the same substantive test for determining whether a mark is valid and enforceable (distinctiveness and likelihood of consumer confusion, respectively). In both jurisdictions, a registered mark is valid for ten years subject to an indefinite number of renewals. The principal difference is that rights to a US mark are based on a "first to use" principle, while the EPO awards priority on a "first to register" basis (although use must begin within five years of registration for the mark to remain valid). The USPTO also tends to take a more aggressive stance in policing applications that appear to resemble registered marks, while the EPO largely places the burden of monitoring a mark on its owner.

[3] It presumably was for this reason that Reebok asked Hogan Lovells to provide "advice on what action Reebok might take and their chances of success" concerning the UK equivalent of the Stripecheck mark after receiving adverse precedent abroad. *See* Hogan Lovells Br. on Evid. Record [Dkt # 53] at 14, quoting Tr. [Dkt # 50] at 99:11-15. Such advice would matter little if the jurisdictions employed completely distinct legal frameworks.

information regarding foreign equivalents could materially advance Autry's position in this dispute.

The court accordingly turns to the nature of the specific representations. Hogan Lovells performed at least the following work for Reebok: (1) processing the renewal of the EU registration of the Stripecheck mark in 2016; (2) drafting a demand letter (that ultimately was not sent) asserting the Russian equivalent of the Stripecheck mark against an unrelated third party; and (3) drafting infringement analyses for the UK equivalent of the Stripecheck mark against two unrelated third parties.[4] While the court is not convinced that the first representation was largely ministerial in nature, as suggested by Hogan Lovells, the second and third representations are nonetheless of the type which would normally involve the exchange of confidential factual information.

---

[4] Because Hogan Lovells's prior representation of Reebok involved assessment of the validity and enforceability of equivalents to the Stripecheck mark, *Gillette* and *ebix* are inapposite. *See Gillette Co. v. Provost*, 2016 WL 2610677, at *7 (Mass. Super. Ct. May 5, 2016) (noting that it "would be a different case if Gillette were claiming that Cekala was helping ShaveLogic to challenge the validity of patents he helped to prosecute and obtain for Gillette"); *ebix.com, Inc. v. McCracken*, 312 F. Supp. 2d 82, 94 (D. Mass. 2004) ("Simply put, there is no substantial relationship (factually or legally) between *registering* copyrights and trademarks for MCI and then allegedly *infringing* those copyrights by copying the software and the manuals.") (emphasis added).

5

Seeking to overcome the presumption that confidential information was exchanged, Hogan Lovells contends that its lead attorneys "do not recall receiving any confidential information related to any of the Asserted Marks, or the foreign versions thereof, during the course of their representation of Reebok."[5] Opp'n to Mot. to Disqualify [Dkt # 38] at 13. But the fact that the lead attorneys do not "recall" receiving any confidential information is not necessarily inconsistent with confidential information having been exchanged at the time. And because it is not clear to the court *how* Hogan Lovells could adequately perform a legal infringement analysis or draft a cease-and-desist letter without learning *any* confidential information from Reebok, the court declines to find the presumption rebutted in the absence of more compelling evidence.

In any event, if nothing else, the representations revealed to Hogan Lovells the existence of three potential competitors in the Russian and UK markets which Reebok viewed as having similar marks[6] — information that

---

[5] During the hearing, Hogan Lovells's witnesses additionally attempted to minimize the extent of Hogan Lovells's prior representation of Reebok. That Reebok was not a large or frequent client of Hogan Lovells, however, has little bearing on the "substantially related" test, which does not measure the intensity of a lawyer's involvement in representing the client but rather the lawyer's real or potential access to client confidences.

[6] One of Hogan Lovells's witnesses conceded during cross-examination that the knowledge that Reebok had considered but never pursued an

6

Autry could use to its material advantage. For example, because many companies operate globally and have trademarks in multiple countries, Autry could use the corresponding US marketing and/or registrations of these parties to undermine validity or consumer confusion here.[7] Or it could use this information to narrow the scope of protection, arguing that, if Reebok does not view similar marks as infringing its foreign registrations, the trademark must have a correspondingly narrow scope in this forum. Autry could also use the information as a bargaining chip during settlement negotiations, threatening to file an action challenging the Russian or UK versions of the mark based on earlier identified weaknesses or on usage of a similar mark by the relevant third parties. That the potential for misuse exists is sufficient to create a conflict of interest.

In allowing the motion to disqualify, the court should not be understood as casting aspersions on Hogan Lovells's integrity or its commitment to protecting its clients' confidences. It has the utmost respect for the firm and its attorneys. All the court holds is that allowing Hogan

---

infringement suit against a company could, in and of itself, be confidential. *See* Tr. at 80:20-23.

[7] Indeed, it may already have taken this step, as Autry's response to the cease-and-desist letter apparently references one of the third parties against whom Hogan Lovells did work for Reebok.

7

Lovells to represent Autry under the circumstances presented here would create an "intolerably strong temptation" to misuse client information, and that temptation alone is grounds to allow the motion to disqualify. *ebix*, 312 F. Supp. 2d at 89, quoting *Dee v. Conf. Holdings, Inc.*, 1998 WL 1247926, at *2 (Mass. Super. Ct. July 14, 1998).

## ORDER

For the foregoing reasons, the motion to disqualify is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE