**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

REEBOK INTERNATIONAL LTD., LLC,
and REEBOK INTERNATIONAL
LIMITED,

        Plaintiffs,

v.

AUTRY INTERNATIONAL S.r.l. and
AUTRY USA, LLC,

        Defendants.

Case No. 1:23-cv-10966-RGS

**DEFENDANT AUTRY USA, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

    A.   Personal Jurisdiction ................................................................................ 2

    B.   False Advertising .................................................................................... 3

ARGUMENT ................................................................................................................ 5

I.     LEGAL STANDARDS ..................................................................................... 5

    A.   Fed. R. Civ. P. 12(b)(2) .......................................................................... 5

    B.   Fed. R. Civ. P. 12(b)(6) .......................................................................... 7

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER AUTRY USA ..................... 8

    A.   Specific Personal Jurisdiction Is Improper ................................................ 8

    B.   General Jurisdiction Is Improper .............................................................. 11

III.  ALTERNATIVELY, COUNTS III, IV AND V OF THE COMPLAINT SHOULD
      BE DISMISSED FOR FAILURE TO STATE A CLAIM, FED. R. CIV. P. 12(b)(6) .......... 13

        1.   Reebok's Allegations in Count III Fail to State a Claim Because They
             Are Formulaic Recitations of the Elements of a Lanham Act False
             Advertising Claim Supported by Mere Conclusory Statements ........................14

        2.   Reebok Has Not Plausibly Pled an Injury to a Commercial Interest In
             Sales Or Business Reputation Proximately Caused By Autry USA's
             Alleged Misrepresentations ...............................................................14

        3.   Reebok Has Not Plausibly Pled a Misrepresentation that Deceives or
             Has the Tendency to Deceive a Substantial Segment of Its Audience or
             that Is Material to a Consumer's Purchasing Decision .......................................17

        4.   Reebok's Allegations as to False Advertising Under Mass. Gen. Laws
             Ch. 93A Necessarily Fail Because Reebok's Federal False Advertising
             Claim Fails ...................................................................................18

    B.   Count V Fails to State a Claim for Common Law Trademark Infringement .............. 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*A Corp. v. All Am. Plumbing, Inc.*,
  812 F.3d 54 (1st Cir. 2016) ............................................................................ 8, 11

*Ahmed v. Hosting.com*,
  28 F. Supp. 3d 82 (D. Mass. 2014) ............................................................... 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 7, 16, 18

*Azurity Pharms., Inc. v. Edge Pharma, LLC*,
  45 F.4th 479 (1st Cir. 2022) ........................................................................ 14, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 7, 16

*Boit v. Gar-Tec Prods., Inc.*,
  967 F.2d 671 (1st Cir. 1992) ......................................................................... 5, 11

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
  284 F.3d 302 (1st Cir. 2002), *cert. denied*,
  537 U.S. 1001 (2002) ................................................................................. 14, 18

*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*,
  228 F.3d 24 (1st Cir. 2000) ......................................................................... 17, 18

*Cossaboon v. Maine Med.l Ctr.*,
  600 F.3d 25 (1st Cir. 2010) ......................................................................... 11, 13

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002), *cert. denied*,
  537 U.S. 1029 (2002) ..................................................................................... 6, 9

*Empire Today, LLC v. Nat'l Floors Direct, Inc.*,
  788 F. Supp. 2d 7 (D. Mass. 2011) ..................................................................... 19

*Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*,
  221 F. Supp. 3d 161 (D. Mass. 2016) ............................................. 15, 16, 17, 20

*First Act Inc. v. Kids Station (U.S.) Incorporated*,
  2006 WL 8458337 (D. Mass. April 4, 2006) ........................................................ 20

*García-Catalán v. United States*,
  734 F.3d 100 (1st Cir. 2013) ............................................................................... 7

*Glater v. Eli Lilly & Co.*,
   744 F.2d 213 (1st Cir. 1984) ..................................................................... 11

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011) ......................................................................... 7

*Harlow v. Child.'s Hosp.*,
   432 F.3d 50 (1st Cir. 2005) ......................................................................... 6

*In Re Elvis Presley Enters. Inc.*,
   50 U.S.P.Q.2d 1632 (T.T.A.B. 1999) ...................................................... 20

*In re Int'l Flavors & Fragrances, Inc.*,
   183 F.3d 1361 (Fed. Cir. 1999) ............................................................... 19

*In re The Upper Deck Co.*,
   59 U.S.P.Q.2d 1688 (TTAB 2001) ......................................................... 20

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................... 6

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ................................................................................ 9, 12

*Kam IV, Inc. v. D'Onfro*,
   No. 16-CV-12079-ADB, 2017 WL 3083166 (D. Mass. July 19, 2017) ...... 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .......................................................................... 1, 14, 16

*Media3 Techs., LLC v. CableSouth Media III, LLC*,
   17 F. Supp. 3d 107 (D. Mass. 2014) ....................................... 5, 6, 9, 10

*Morales-Cruz v. Univ. of P.R.*,
   676 F.3d 220 (1st Cir. 2012) ....................................................................... 7

*Morphotrust USA, LLC v. Identrix, LLC*,
   No. 16-cv-10074, 2016 WL 3512131 (D. Mass. June 21, 2016) ................. 6

*Motus, LLC v. CarData Consultants Inc.*,
   520 F. Supp. 3d 87 (D. Mass. 2021), *aff'd*,
   23 F.4th 115 (1st Cir. 2022) ..................................................... 5, 6, 10

*Motus, LLC v. CarData Consultants, Inc.*,
   23 F.4th 115 (1st Cir. 2022) ..................................................................... 13

*Newman v. European Aeronautic Defence and Space Co. Eads N.V.*,
   700 F. Supp. 2d 156 (D. Mass. 2010) ...................................................... 13

*Noonan v. Winston Co.*,
  135 F.3d 85 (1st Cir. 1988) .......................................................................................... 11

*Pac. Indem. Co. v. NEDI Const. LLC*,
  No. 12-11844-RWZ, 2014 WL 496842 (D. Mass. Feb. 7, 2014) .................................. 6, 11, 12

*Pegasystems, Inc. v. Appian Corp.*,
  424 F. Supp. 3d 214 (D. Mass. 2019) ........................................................................ 17, 18, 19

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
  905 F.3d 1 (1st Cir. 2018) .............................................................................................. 5, 13

*Roberts v. Legendary Marine Sales*,
  447 Mass. 860 (2006) ......................................................................................................... 9

*Rodriguez v. Doral Mortg. Corp.*,
  57 F.3d 1168 (1st Cir. 1995) ............................................................................................. 19

*Solomon v. Khoury*,
  No. 16-10176, 2017 WL 598758 (D. Mass. Feb. 13, 2017) ............................................. 7, 15

*Spruce Env't. Techs., Inc. v. Festa Radon Techs., Co.*,
  248 F. Supp. 3d 316 (D. Mass. 2017) ............................................................................... 19

*Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.*,
  946 F. Supp. 2d 182 (D. Mass. 2012) ......................................................................... 7, 8, 10, 12

*Sutra, Inc. v. Iceland Express*,
  2008 WL 2705580 (D. Mass. 2008) .................................................................................. 20

*Ticketmaster–New York, Inc. v. Alioto*,
  26 F.3d 201 (1st Cir. 1994) ................................................................................................ 5

*United States v. Swiss American Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001) ............................................................................................. 11

*Williams-Sonoma, Inc. v. Wayfair Inc.*,
  No. 1:21-12063-PBS, 2023 WL 371035 (D. Mass. Jan. 24, 2023) .................................... 7

**STATUTES**

15 U.S.C. § 1125(a)(1)....................................................................................................... 13

15 U.S.C. § 1125(a)(1)(B) ................................................................................................. 14

28 U.S.C. § 1631 ............................................................................................................... 13

Mass. Gen. Laws ch. 93A ..................................................................................... 13, 18, 19

Mass. Gen. Laws ch. 223A, § 3 ................................................................... 6

**RULES**

Fed. R. Civ. P. 12(b)(2).......................................................................... 1, 5, 20

Fed. R. Civ. P. 12(b)(6)..................................................................... 1, 7, 13, 20

Fed. R. Civ. P. 4(k)(2)................................................................................ 13

**OTHER AUTHORITIES**

4A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE
    § 1067.5 (3d ed. 2002) ........................................................................ 11

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:61 (5th.) ............................ 19

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:38 (5th ed.) ........................ 11

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:45 (5th ed.) ........................ 13

**INTRODUCTION**

Plaintiffs Reebok International Ltd., LLC and Reebok International Limited's ("**Plaintiffs**" or "**Reebok**") claims of trademark infringement, unfair competition, and false advertising against Defendant Autry USA, LLC ("**Autry USA**") should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Reebok has not sufficiently pled this Court has personal jurisdiction over Autry USA, a non-resident company that has no commercial presence in Massachusetts. Reebok's Complaint alleges no facts to support its allegations that Autry USA has regularly imported, distributed, marketed, sold, or offered for sale the allegedly infringing shoes into Massachusetts. Instead, Reebok relies on unsupported, conclusory allegations that are contradicted by Autry USA's own sworn declaration. This action should be dismissed in its entirety against Autry USA for lack of personal jurisdiction.

In the alternative, Counts III, IV and V of the Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1] Count III (Federal Unfair Competition and False Advertising) and Count IV (Massachusetts Deceptive and Unfair Trade Practices), to the extent they concern false advertising issues, should be dismissed because Reebok has failed to plausibly allege an economic or reputational injury proximately caused by Autry USA's allegedly false and/or misleading use of an American flag as part of its house mark (*i.e.*, the "**Autry Flag Logo**") and other use of American flag indicia on packaging and inserts, as is required to maintain a false advertising claim under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Reebok has also failed to plausibly allege that these uses of the  flag

---

[1] The parties have reached an agreement that Count I does not include a claim for infringement of the Vector Logo Registrations (Compl., ¶¶ 60, 62, Exhs. 3-5); and Count II does not include a claim for trade dress infringement, and Reebok will not seek relief related to its alleged trade dress. (*See* Prayer for Relief, ¶ 1(d).)

actually deceive or have a tendency to deceive a substantial segment of Autry's customers, or that the presence of the American flag indicia is material to a purchasing decision. Finally, Count V (Common Law Trademark Infringement) should be dismissed because it fails to describe with particularity the common law trademarks that are being asserted.

## FACTUAL BACKGROUND

### A.    Personal Jurisdiction

Reebok makes the following unsubstantiated factual allegations in support of its contention that this Court has personal jurisdiction over Autry USA:

- Autry has engaged in substantial and regular business in Massachusetts by "importing, distributing, marketing, offering for sale, and selling its goods generally as well as [the allegedly] Infringing Shoes specifically to consumers and/or entities" in this forum. (Dkt. 1, ¶ 28).

- Autry USA owns, maintains, and uses the commercial website www.autry-usa.com to solicit business from individuals and entities residing in Massachusetts and sells the allegedly infringing shoes to Massachusetts residents. (Dkt. 1, ¶ 28).

- Autry is aware that Reebok has headquarters and retail locations in Massachusetts and was aware that its conduct would be significantly felt in the District. (Dkt. 1, ¶ 29).

Not only does each of these bald allegations lack factual support, but each is refuted by sworn testimony from Autry USA. Autry USA is licensed by Autry International S.r.l.[2] ("**Autry International**"), the designer of the allegedly infringing shoes, to market, sell, and distribute products in the United States. Declaration of Marco Massini ("**Massini Decl**.") ¶ 5. Autry USA fulfills this role by selling and shipping footwear to U.S. retailers. *Id*. However, Autry USA does ***not*** have any contracts or agreements with retailers in Massachusetts to sell the allegedly infringing shoes or any other footwear products. *Id*., ¶ 8. Also, Autry USA does ***not*** sell products directly to

---

[2] Autry International S.r.l., a named defendant, has not yet been served with the Complaint.

consumers; thus, it has never sold the allegedly infringing shoes to any consumer in Massachusetts. *Id.*, ¶ 7. Autry USA has only sold products, less than 200 units, to ***one*** retailer in Massachusetts to fulfill two purchase orders procured by an independent sales representative located in New York. *Id.*, ¶ 6. Contrary to Reebok's unfounded assertions, Autry USA plays no role in the ownership, management, content or maintenance of the website <autry-usa.com>, which is owned by Autry International and managed by a non-party company, FFW, S.r.L. *Id.*, ¶ 10. Further, Autry USA has conducted no marketing activities, let alone directed targeted marketing into Massachusetts. *Id.*, ¶ 11.

Autry USA has no general ties to Massachusetts. As conceded in Reebok's Complaint, Autry USA is a Delaware corporation with its principal place of business in New York. Dkt. 1, ¶ 23; Massini Decl., ¶ 12. Autry USA does not have, and has never had, offices, real or personal property, telephone listings, employees, or factories in Massachusetts. Decl., ¶ 13. Nor is Autry USA registered to conduct business in Massachusetts. *Id.* It has maintained no bank accounts here and never advertised here. *Id.* Reebok's allegations are unsupported and without merit.

### B. False Advertising

Reebok makes the following unsubstantiated factual allegations in support of its contention that the Autry Flag Logo and Autry USA's[3] use of American flag indicia constitute false advertising under the federal Lanham Act:

- "Autry's use of the United States flag in their AUTRY FLAG LOGO is wholly misleading as Autry International S.r.l is a foreign (Italian)-based entity that manufactures its shoes in Asia. The AUTRY FLAG LOGO, and Autry's additional usage of United States flag designs on packaging, attempts to mislead consumers into believing that the shoes they are

---

[3] None of Autry USA's arguments with regard to Reebok's false advertising and deceptive trade practices claims should be taken as admissions that Autry USA has any involvement with the allegedly infringing products beyond what is set forth in Section II(a).

purchasing are made in the United States, when in fact that notion is materially false." Dkt. 1, ¶ 94.

- "Autry has made false and/or misleading representations of fact in its promotional and advertising materials, including the advertising and promotions on its website, regarding the geographic origin of its goods. Specifically, Autry's use of the AUTRY FLAG LOGO and other United States flag imagery on its shoes and packaging has deceived and misled the public by misrepresenting that its shoes are made in or originate in the United States, when they do not." Dkt. 1, ¶ 140.

- "Autry's shoes, including the Infringing Shoes, originate from and are made in countries other than the United States and have no connection with the United States beyond their sale in interstate commerce." Dkt. 1, ¶ 141.

- "Autry's false and misleading representations have deceived and/or are likely to deceive consumers in a material way, in that consumers are likely to rely on Autry's misrepresentations regarding the origin of its shoes in deciding whether to buy Autry's products." Dkt. 1, ¶ 143.

- "Autry's false and misleading representations of material fact have caused, and are likely to continue causing, substantial injury to the public and to Reebok, including by harming and undermining Reebok's competitive position." Dkt. 1, ¶ 144.

Reebok makes the following unsubstantiated factual allegations in support of its contention that the Autry Flag Logo and Autry USA's use of American flag indicia constitutes false advertising under Mass. Gen. Laws ch. 93A:

- "Autry's…statements regarding the nature, characteristics, qualities, and/or geographic origin of [its] shoes, including but not limited through its use of the AUTRY FLAG LOGO and other United States flag imagery, are unfair trade practices and materially deceptive." Dkt. 1, ¶ 146.

- "Autry's…false and misleading statements are made in connection with the advertising, offer for sale, and sale of products and is directed primarily and substantially within Massachusetts, including because Reebok is headquartered in Massachusetts; Autry distributes the Infringing Shoes and other products sold in connection with its deceptive advertising in Massachusetts; and Autry directs its advertising at customers and prospective customers in Massachusetts, in addition to the entire United States." Dkt. 1, ¶ 147.

- "These commercial advertisements and statements have and will continue to cause the loss of goodwill and the loss of current and prospective

customers of Reebok who, but for the false and misleading advertisements and statements made by Autry, would conduct business with Reebok or its authorized licensees." Dkt. 1, ¶ 148.

- "Reebok has been and will continue to be irreparably harmed unless Autry's use of…the AUTRY FLAG LOGO in the United States in connection with the Infringing Shoes is enjoined." Dkt. 1, ¶ 149.

Beyond these cursory statements, Reebok's Complaint fails to provide any details on the factual underpinnings for these allegations. For example, Reebok has not alleged how the Autry Flag Logo or use of American flag indicia undermines Reebok's competitive position (Dkt. 1, ¶ 144) or how or why current and prospective customers of Reebok would conduct business with Reebok or its authorized licensees "but for the false and misleading advertisements and statements made by Autry[.]" Dkt. 1, ¶ 148. Even assuming, *arguendo*, that the Autry Flag Logo falsely misrepresents the origins of Autry USA's goods, which it does not, Reebok has not plausibly alleged how Reebok *in particular* has been harmed by these alleged misrepresentations.

## ARGUMENT

### I. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 12(b)(2)

Reebok bears the burden of showing that personal jurisdiction exists. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 90 (D. Mass. 2021), *aff'd*, 23 F.4th 115 (1st Cir. 2022). Specifically, Reebok must "proffer evidence of specific facts 'sufficient to support findings of all facts essential to personal jurisdiction' without relying on unsupported allegations." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018); *Boit*, 967 F.2d at 675. Further, the court will not credit "conclusory allegations or draw farfetched inferences." *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). The court can also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted[,]" *Media3 Techs., LLC v. CableSouth Media III, LLC*, 17 F. Supp. 3d

107, 110 (D. Mass. 2014), and will consider the alleged facts along with the parties' supplemental filings, including affidavits. *Morphotrust USA, LLC v. Identrix, LLC*, No. 16-cv-10074, 2016 WL 3512131, at *1 (D. Mass. June 21, 2016).

Here, Reebok must show both that the exercise of personal jurisdiction is permitted by the Massachusetts Long Arm statute, Mass. Gen. Laws ch. 223A, § 3, and that it comports with the Due Process Clause because the defendant has "minimum contacts" with Massachusetts. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002), *cert. denied*, 537 U.S. 1029 (2002). Because the requirements of the Massachusetts Long Arm statute are coextensive with the limits imposed by the Fourteenth Amendment, the Court need only conduct the constitutional analysis. *Media3 Techs.*, 17 F. Supp. 3d at 110; *Motus*, 520 F. Supp. 3d at 91.

The Due Process Clause imposes three requirements on the exercise of jurisdiction over out-of-state defendants. *Harlow v. Child.'s Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).

*First*, the defendant must have sufficient "minimum contacts" with Massachusetts. Due process requires that a defendant over whom a Massachusetts court will exercise jurisdiction has maintained "minimum contacts" with the state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Media3 Techs.*, 17 F. Supp. 3d at 110-11.

*Second*, for either type of jurisdiction to apply, the defendant's contacts with the state must be purposeful; any contacts with the forum state must be foreseeable and voluntary rather than "random, isolated, or fortuitous." *Pac. Indem. Co. v. NEDI Const. LLC*, No. 12-11844-RWZ, 2014 WL 496842, at *2 (D. Mass. Feb. 7, 2014); *Motus*, 520 F. Supp. 3d at 92.

*Third*, the exercise of jurisdiction must be reasonable under the circumstances considering a number of factors, including: (1) the defendant's burden of appearing; (2) Massachusetts' interest

in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc*., 946 F. Supp. 2d 182, 192 (D. Mass. 2012).

### B.     Fed. R. Civ. P. 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the plausibility standard is not a "probability requirement," it requires more than the mere possibility that a defendant acted unlawfully. *Id.* (quotation omitted). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Courts in the First Circuit conduct a two-step, context-specific inquiry to review the sufficiency of a complaint. *See, e.g.*, *Solomon v. Khoury*, No. 16-10176, 2017 WL 598758, at *1 (D. Mass. Feb. 13, 2017) (citing *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)). "First, the Court must 'separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Williams-Sonoma, Inc. v. Wayfair Inc.*, No. 1:21-12063-PBS, 2023 WL 371035, at *2 (D. Mass. Jan. 24, 2023) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the Court must determine whether the factual allegations present a 'reasonable inference that the defendant is liable for the conduct alleged.'" *Solomon*, 2017 WL 598758 at *1 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER AUTRY USA

### A.    Specific Personal Jurisdiction Is Improper

Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities; that is, the plaintiff's claims must be related to the defendant's contact in the forum state. *Sun Life*, 946 F. Supp. 2d at 186, 190. In support of its assertions of personal jurisdiction, Reebok has pled only that: (1) Autry has engaged in substantial and regular business in Massachusetts and this District, by allegedly importing, distributing, marketing, offering for sale, and selling its goods generally and the allegedly infringing shoes specifically, to consumers and/or entities in Massachusetts; (2) Autry owns, maintains, and uses the website <autry-usa.com> to solicit business and sell the allegedly infringing products to individuals and entities in Massachusetts; and (3) Autry is aware that Reebok has its headquarters in Boston, Massachusetts and retail locations in the Commonwealth, such that its allegedly unlawful conduct would be felt within the District. Dkt. 1, ¶¶ 28-29. Autry USA addresses each allegation in turn.

Reebok bears the burden of proving each requirement for personal jurisdiction and may not rely on conclusory allegations or far-fetched inferences to meet this burden. *See Sun Life*, 946 F. Supp. 2d at 187. Instead, Reebok must put forward sufficient factual allegations to support a finding that personal jurisdiction exists. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). Here, Reebok's allegation that Autry USA, on a substantial and regular basis, imports, distributes, markets, offers for sale, or sells any goods in Massachusetts — let alone the allegedly infringing footwear products — lacks any factual support.

Autry has sold goods to only ***one retailer*** in Massachusetts, pursuant to two purchase orders that retailer placed with an independent sales representative for Autry USA in December 2022 and January 2023. Massini Decl., ¶ 6. The total units sold were less than 200. *Id.* These isolated sales,

procured by an independent sales representative, are a far cry from *substantial and regular* activities. *Roberts v. Legendary Marine Sales*, 447 Mass. 860, 865 (2006) (sale of one boat insufficient to establish any 'persistent course of conduct' on the defendant's part in Massachusetts"). Reebok has not identified any Massachusetts distributors of the allegedly infringing shoes, nor pointed to any Autry USA advertising for the allegedly infringing shoes directed to Massachusetts residents, because there are none. Massini Decl., ¶ 11. Without such factual support, Reebok's claim of specific jurisdiction over Autry USA fails. *Roberts*, 447 Mass. at 865; *see also J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888 (2011) ("[n]one of our precedents finds that a single isolated sale…is sufficient") (J. Breyer, concurring).

Reebok's allegation that Autry USA is subject to personal jurisdiction in Massachusetts because it allegedly owns, maintains, and uses the website at <autry-usa.com> to solicit business and sell the allegedly infringing shoes cannot support specific jurisdiction because it is incorrect; and even if it were correct, it would still be insufficient. As detailed in Autry USA's sworn declaration, Autry USA has no role in, or involvement with, the website at <autry-usa.com>. Massini Decl. ¶ 10. It does not supply the inventory, invoice the customers, or fulfill orders placed on the site. *Id*. This Court should not rely on Reebok's incorrect allegations regarding the <autry-usa.com> website to find personal jurisdiction over Autry USA. *See Media3 Techs.*, 17 F. Supp. 3d at 110 (the court can also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted" (citing *Daynard*, 290 F.3d at 51)). Moreover, even if Autry USA were involved with the <autry-usa.com> website, which it is not, Reebok has still failed to meet its burden because it has not alleged any facts supporting the conclusion that any transactions with Massachusetts consumers were made via the website, that the website specifically targeted Massachusetts consumers, or that Autry USA derived any income from sales on the website (it did

not).[4] *See Motus*, 520 F. Supp. 3d at 92-93 ("Plaintiff has put forward no evidence showing that CarData, a Canadian corporation, actually and purposefully conducted business with Massachusetts residents through its website. Nothing in the record shows that Cardata, for instance, targeted Massachusetts residents specifically or that its website contains content which is any more likely to solicit customers in Massachusetts than anywhere else. Nor is there any evidence that CarData has acquired any revenue from Massachusetts residents, at all, let alone in a substantial sum.") (internal citations omitted); *Sun Life*, 946 F. Supp. 2d at 192 (finding no personal jurisdiction over alleged copyright infringement defendants where website was not directed specifically to Massachusetts and plaintiffs had not alleged that defendants had a non-trivial amount of customers or revenue from Massachusetts).

Finally, Reebok's conclusory allegations that Autry USA was both aware that Reebok had its headquarters in Boston and retail locations in the Commonwealth and knew that the impact of its allegedly unlawful conduct would be felt within this District is again, unsupported by factual allegations. At most, one Director of Autry Corp., the owner of Autry USA, knew that Reebok had offices in Massachusetts, but did not know that Reebok's headquarters were in Massachusetts. *See* Massini Decl., ¶ 15. This knowledge alone is insufficient to establish purposeful availment in Massachusetts because Reebok has failed to allege that Autry USA intentionally infringed on Reebok's claimed trademarks *to cause injury in Massachusetts*. *See Media3 Techs.*, 17 F. Supp. 3d at 112-113; *Motus*, 520 F. Supp. 3d at 93.

---

[4] The Google Trends page that Reebok attaches as Exhibit 1 to the Complaint merely demonstrates that the website is available to, and viewed by, Massachusetts consumers, not that any transactions were completed by Massachusetts consumers or that the website targets Massachusetts consumers specifically. *See Motus*, 520 F. Supp. 3d at 92-93.

## B.     General Jurisdiction Is Improper

General jurisdiction exists when a defendant's connections with the forum state are so continuous and systematic as to make the corporation essentially at home there. 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 32:38 (5th ed.); *Cossaboon v. Maine Med.l Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010); *see also* 4A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1067.5 (3d ed. 2002) ("[T]he defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general *in personam* jurisdiction."). Further, in this District, the test for evaluating contacts for general jurisdiction "is considerably more stringent" than that applied to specific jurisdiction questions. *Cossaboon*, 600 F.3d at 32 (citing *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215 (1st Cir. 1984)); *Pacific*, 2014 WL 496842, at *3 (citing *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) (quoting *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1988))).

In the present case, Reebok has pled only that Autry USA has "engaged in substantial and regular business in the Commonwealth of Massachusetts and this District" and has "maintained purposeful minimum contracts with the Commonwealth of Massachusetts and this District." Dkt. 1, ¶¶ 28, 31. These conclusory allegations merely repeat the standard for personal jurisdiction and fail to allege any facts in support thereof, and consequently are insufficient to support a finding of general jurisdiction over Autry USA. *See A Corp.*, 812 F.3d at 58; *Boit*, 967 F.2d at 681 ("To hold that the Boits have made a *prima facie* showing of personal jurisdiction because Gar-Tec has not presented evidence to refute the Boits' unsupported allegations would place the burden on defendants to prove that the court does not have personal jurisdiction. Such a ruling would eviscerate the requirement that plaintiffs provide affirmative proof of their jurisdictional

allegations."). Indeed, as discussed above, Autry sold product to only one retailer in Massachusetts. For that one retailer, the isolated sales were made by an independent sales representative. Massini Decl., ¶ 6. These facts cannot be considered ***substantial and regular*** business activity to support the exercise of general personal jurisdiction by this Court.

Reebok's pled "facts" are plainly incorrect, contradicted by Autry USA's sworn testimony, and should hold no weight. Autry USA has no involvement with the website at <autry-usa.com>, nor does it import, distribute, market, offer for sale, or sell goods generally or the allegedly infringing shoes specifically, to consumers or other entities (aside from two isolated sales to a single retailer) in Massachusetts. Massini Decl., ¶ 10. Autry USA has no general ties to Massachusetts, let alone the kind of continuous and systematic business ties required to support a finding of general jurisdiction: it does not have, and has never had, any offices, real or personal property, telephone listings, employees, or factories in Massachusetts. *Id.*, ¶ 13. It is not registered to conduct business in Massachusetts. *Id.* It has never maintained any bank accounts here and never advertised here. *Id.* Given Autry USA's dearth of ties to this forum, it would be improper to exercise general jurisdiction over Autry USA in Massachusetts. *See Pacific*, 2014 WL 496842, at *3 (finding no general jurisdiction over defendant Minnesota corporation with its principal place of business there, and no officers, employees, or accounts in Massachusetts, and with sales in Massachusetts amounting to less than 1-2% of its total nationwide annual sales); *Sun Life*, 946 F. Supp. 2d at 192 (finding no general jurisdiction over copyright infringement defendants where website was not directed specifically at Massachusetts; defendant was a New Jersey corporation with a principal place of business there, no offices in Massachusetts, and not registered to do business there); *see also J. McIntyre*, 564 U.S. at 888 (no personal jurisdiction where only a few allegedly infringing machines, at most, were sold into the forum state). Indeed, both the First

Circuit and this District have failed to find general jurisdiction in other cases where the defendant's alleged ties to this forum were vastly more substantial than Autry USA's alleged connections. *See, e.g.*, *Cossaboon*, 600 F.3d at 34-35, 38 (holding that the defendant was not subject to general personal jurisdiction in New Hampshire even though defendant advertised to state residents, was registered to do business in state and had one state-based employee, derived 3.24% percent of total revenue from in-state residents, and treated a substantial number of state residents); *Newman v. European Aeronautic Defence and Space Co. Eads N.V.*, 700 F. Supp. 2d 156, 168 (D. Mass. 2010) (no general personal jurisdiction where defendants were not registered to do business in Massachusetts, had no Massachusetts-based employees, but derived 1.36% of total revenue from Massachusetts customers). Thus, this Court should not find general jurisdiction over Autry USA.[5]

## III. ALTERNATIVELY, COUNTS III, IV AND V OF THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM, FED. R. CIV. P. 12(b)(6)

### A. Counts III and IV Fail to State a Claim for False Advertising

Counts III and IV of Reebok's Complaint fail to state claims upon which relief can be granted for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a)(1), and under the Massachusetts Consumer Protection law, Mass. Gen. Laws ch. 93A. Reebok's false advertising

---

[5] Reebok pleads, in the alternative, that this Court has jurisdiction over Autry USA under Federal Rule of Civil Procedure 4(k)(2) based on its aggregate contacts with the United States as a whole. Dkt. 1, ¶ 33. However, Fed. R. Civ. P. 4(k)(2) applies to entities that do not reside anywhere in the United States. MCCARTHY § 32:45; *Plixer*, 905 F.3d at 6; *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 127 (1st Cir. 2022). Fed. R. Civ. P. 4(k)(2) jurisdiction only applies to defendants who are not subject to jurisdiction in any single state. Autry USA is not a foreign company: it is a Delaware corporation with its principal place of business in New York, New York. Dkt. 1, ¶ 23; Massini Decl., ¶ 12. Because personal jurisdiction over Autry USA may be proper in the courts of general jurisdiction in either of these states, Fed. R. Civ. P. 4(k)(2) does not and cannot apply to Autry USA. If the Court is inclined to transfer to this action to a proper forum, pursuant to 28 U.S.C. § 1631, it should be transferred to the Southern District of New York where Autry has an office and employee.

allegations are naked assertions devoid of the details required to carry Reebok's burden of demonstrating plausibility as to injury, consumer deception, and materiality.

1. **Reebok's Allegations in Count III Fail to State a Claim Because They Are Formulaic Recitations of the Elements of a Lanham Act False Advertising Claim Supported by Mere Conclusory Statements**

The claims in Count III arise under the federal Lanham Act, 15 U.S.C. § 1125(a)(1)(B). To state a claim for federal false advertising, a plaintiff must allege that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) **the misrepresentation is material, in that it is likely to influence the purchasing decision**; (3) **the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience**; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) **the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products**. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002), *cert. denied*, 537 U.S. 1001 (2002); *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022). To adequately plead the fifth element — injury — "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140. Here, Reebok has not — and likely cannot —adequately plead the fifth element and has inadequately pled the second and third elements.

2. **Reebok Has Not Plausibly Pled an Injury to a Commercial Interest In Sales Or Business Reputation Proximately Caused By Autry USA's Alleged Misrepresentations**

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 130. As

interpreted by this District, "first…a plaintiff must show that the deceptive advertising financially injured its sales or reputation. Second, a plaintiff must show proximate cause, specifically 'economic or reputational injury' that is a direct result of the false advertising." *Ferring Pharms., Inc. v. Braintree Lab'ys, Inc.*, 221 F. Supp. 3d 161, 166, 168-69 (D. Mass. 2016) (finding no direct injury from alleged false advertisement where the advertisement never mentioned plaintiff's product and actually compared two different products). When a complaint fails to contain any plausible factual assertions concerning *either* financial injury to sales or reputation *or* proximate cause, it must be dismissed under *Lexmark*. *See Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 91 (D. Mass. 2014) ("Without pleading facts that assert his claims fall within the zone of interest and demonstrate proximate causation, Ahmed's claims fail to establish standing under the *Lexmark* test."); *Solomon*, 2017 WL 598758, at *4 ("Solomon has not alleged decreased sales of anything. As such, Solomon fails to plead these claims sufficiently since his claims are "too remote" from the defendants' alleged unlawful conduct."); *Kam IV, Inc. v. D'Onfro*, No. 16-CV-12079-ADB, 2017 WL 3083166, at *1 (D. Mass. July 19, 2017).

Reebok's complaint suffers the same fatal flaws once its improper legal conclusions concerning injury are disregarded. Tellingly, Reebok's complaint only contains two brief mentions of how Reebok has been affected, let alone plausibly injured, by Autry's Flag Logo and use of American flag indicia: (1) the Autry Flag Logo is somehow harming and undermining Reebok's competitive position and (2) that the Autry Flag Logo has caused the loss of goodwill and the loss of current and prospective customers of Reebok who, but for the allegedly false and misleading advertisements and statements made by Autry USA, would conduct business with Reebok or its authorized licensees. Dkt. 1, ¶¶ 144, 148. But Reebok's Complaint contains no factual development or explanation as to what these allegations mean. Even in the light most favorable to

Reebok, these allegations do not plausibly state a cognizable "economic or reputational injury," *Lexmark*, 572 U.S. at 133, nor any "financial[] injur[y to Reebok's] sales or reputation," *Ferring*, 221 F. Supp. 3d at 168. They are instead akin to the insufficiently pled allegations in *Solomon* and *Ahmed*, which also lacked factual development, identification of the products affected by the false advertising, and instead merely "hint[ed] at a commercial interest within section 1125(a)'s zone of interests." *Ahmed*, 28 F. Supp. 3d at 91.

Even assuming, *arguendo*, that such allegations are sufficiently pled to bring them within the ambit of § 1125(a)(1), Reebok has not pled **how** Autry USA's use of American flag indicia has caused or is causing injury **to Reebok specifically**. Reebok does not allege with any specificity how the Autry Flag Logo has directly impacted Reebok, how Reebok has suffered any concrete and direct harm by virtue of Autry's use of American flag indicia, and/or how or why consumers would choose to buy Autry USA's shoes over Reebok's shoes because of the American flag indicia. Reebok has simply not pled any plausible nexus between Autry USA's use of American flag indicia and Reebok, or how the allegedly false indicia specifically "harm[s] and undermine[s] Reebok's competitive position," vis-a-vis Autry specifically, let alone in the larger sneaker market.

As courts in the First Circuit regularly hold, "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, and outright vituperation carry no weight" when judging the adequacy of a plaintiff's allegations. *Ahmed*, 28 F. Supp. 3d at 91. Reebok's allegations concerning the purported injury it has suffered and its purportedly proximate causation by Autry are merely unsubstantiated conclusions and "naked assertions" without "further factual enhancement," *Iqbal*, 556 U.S. at 678, that render Reebok's complaint insufficiently pled under *Twombly* and *Iqbal*. Without sufficient allegations concerning injury, a key *prima facie* element of this claim, Reebok's claim necessarily fails.

**3.** **Reebok Has Not Plausibly Pled a Misrepresentation that Deceives or Has the Tendency to Deceive a Substantial Segment of Its Audience or that Is Material to a Consumer's Purchasing Decision**

"A defendant can be liable under the Lanham Act both for claims that are 'literally false' and those that are 'true ... [yet] misleading.'" *Pegasystems, Inc. v. Appian Corp.*, 424 F. Supp. 3d 214, 222 (D. Mass. 2019) (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000)). "'Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false,' though such claims may still be misleading." *Id.* For misleading advertising claims, ***plaintiffs*** bear the burden of pleading that consumers were actually misled by the allegedly misleading advertising or that such advertising has the tendency to deceive a substantial segment of its audience. *Cf. Ferring*, 221 F. Supp. 3d at 165; *Pegasystems,* 424 F. Supp. 3d at 223-24. Consumer deception is otherwise only presumed when an advertising claim is literally false or when there is an intentional attempt to confuse consumers. *Ferring*, 221 F. Supp. 3d at 165. Accordingly, "[u]nless consumer deception is presumed, [a plaintiff] will need to show that 'a substantial segment of [the advertisement's] audience' was actually deceived." *Pegasystems*, 424 F. Supp. 3d at 223.

Reebok has not pled that the Autry Flag Logo is literally false. It is not. Nor has Reebok pled that Autry USA's use of American flag indicia represents an intentional attempt to confuse consumers. It does not. As such, Autry USA's use of American flag indicia can, at most, be interpreted as an implied claim concerning the origins of Autry's products, thereby properly framing the analysis through the lens of a "misleading" advertising claim. And if the challenged advertising is merely misleading, Reebok must adequately plead consumer deception because this element cannot be presumed. *See Pegasystems*, 424 F. Supp. 3d at 223.

Reebok has alleged that Autry USA's use of the AUTRY FLAG LOGO and other United States flag imagery on its shoes and packaging has deceived and misled the public by

misrepresenting that its shoes are made in or originate in the United States, when they do not (Dkt. 1, ¶ 140), that its use of the Autry Flag Logo and other United States flag imagery on its packaging is likely to cause confusion, or to cause mistake, or to deceive as to the origin of Autry USA's shoes (Dkt. 1, ¶ 142), and that Autry USA's false and misleading representations have deceived and/or are likely to deceive consumers in a material way, in that consumers are likely to rely on Autry's misrepresentations regarding the origin of its shoes in deciding whether to buy Autry's products (Dkt. 1, ¶ 143).

On their face, Reebok's allegations are entirely "formulaic recitation[s] of the elements of [the] cause of action" "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Reebok has not identified any specific consumers that have been deceived as to the origin of Autry's products, let alone that Autry USA's use of American flag indicia has deceived or has the tendency to deceive "a substantial segment" of Autry USA's customers. *Pegasystems*, 424 F. Supp. 3d at 223. Nor has Reebok pled any facts supporting its conclusion that the country where Autry's products are manufactured is important to purchasers and will affect their purchasing decisions. Reebok's generalized and speculative allegations concerning the deception of "the public" and unidentified "consumers" do not cross the threshold of pleading "how consumers have actually reacted to the challenged advertisement." *Clorox*, 228 F.3d at 33. Thus, Reebok's allegations concerning consumer deception are "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, and thus Reebok's federal false advertising claim should be dismissed.

### 4. Reebok's Allegations as to False Advertising Under Mass. Gen. Laws Ch. 93A Necessarily Fail Because Reebok's Federal False Advertising Claim Fails

The elements of a Mass. Gen. Laws Chapter 93A claim for false advertising "overlap[ ]" with those of a Lanham Act false advertising claim. *Cashmere*, 284 F.3d at 320; *Azurity*, 45 F.4th at 487. In this way, "[t]o establish a false advertising claim under Chapter 93A, a plaintiff must

prove all of the elements of a false advertising claim under Section 43(a) of the Lanham Act." *Empire Today, LLC v. Nat'l Floors Direct, Inc.*, 788 F. Supp. 2d 7, 26 (D. Mass. 2011). As a result, "[f]alse advertising claims under the Lanham Act and Chapter 93A rise and fall together." *Spruce Env't. Techs., Inc. v. Festa Radon Techs., Co.*, 248 F. Supp. 3d 316, 321 (D. Mass. 2017). *Accord Pegasystems*, 424 F. Supp. 3d at 224. Accordingly, for the same reasons stated in Section III.B, Reebok's claims in Count IV concerning false advertising also fails to state a claim for relief under Mass. Gen. Laws ch. 93A and should be dismissed.

### B. Count V Fails to State a Claim for Common Law Trademark Infringement

Count V asserts a claim for common law trademark infringement. However, nowhere in the Complaint does Reebok describe what its common law rights are. Reebok refers obliquely to its Stripecheck, Crosscheck and Window Box Marks, but never properly defines them, beyond circling portions of different looking shoes. Autry is entitled to know the asserted scope of the common law marks to defend against Reebok's claim of infringement. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995) (defendant has inalienable right to know in advance the claim being asserted against it). Unlike federal trademark registrations, which provide notice to the public as to what rights the registrant is claiming, common law marks do not provide such notice. McCARTHY §19:61 (registrations serve to "put competitors on notice as to the scope of the exclusive rights that are" claimed); *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1367 (Fed. Cir. 1999) ("By providing notice to potential users of the same or a confusingly similar mark, federal registration promotes the purposes of trademark law."). Reebok refers to its common law marks by names — Stripecheck, Crosscheck, and Window Box marks — but provides no clear description of what it claims its common law rights to be. To be clear, Reebok does not claim that these are word marks. For example, does the Window Box Mark include the REEBOK Union Jack Mark or not? Dkt. 1, ¶¶ 68-69. Does the Crosscheck mark include the Window Box Mark, as

depicted in many of the photos in the Complaint, or not? *See, e.g.*, Dkt. 1, ¶ 53. Does the Stripecheck Mark include both the Crosscheck Mark and the Window Box Mark, as depicted in many of the photos in the Complaint, or not.? *Id.* The lack of clarity with respect to the asserted trademarks fails to put Autry on notice of the claims asserted against it. *In Re Elvis Presley Enters. Inc.*, 50 U.S.P.Q.2d 1632 (T.T.A.B. 1999) (claimed scope was too broad); *In re The Upper Deck Co.*, 59 U.S.P.Q.2d 1688, 1689 (TTAB 2001) (broad scope did not provide notice). Common law design trademarks can be analogized to trade dress and trade secrets because there is not a formal registration, so the design alone does not put a defendant on notice of what particular elements of that design Plaintiff claims to own. *See First Act Inc. v. Kids Station (U.S.) Incorporated*, 2006 WL 8458337, at *4 (D. Mass. April 4, 2006) ("[w]ithout such a precise expression of the character and scope of the claimed trade dress, courts will be unable to evaluate how unique and unexpected the design is in the relevant market … [and] Courts will also be unable to shape narrowly-tailored relief") (citations omitted); *Sutra, Inc. v. Iceland Express*, 2008 WL 2705580, at *4 (D. Mass. 2008) (trade secrets must be described with specificity); *Ferring*, 38 F. Supp. 3d at 175. Further, at trial, Reebok will have to prove the distinctiveness and fame of its common law trademarks, which it cannot do unless the common law marks are defined. Thus, Count V should be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Autry USA respectfully requests that the Court dismiss the Complaint against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); or, alternatively, dismiss Count III and Count IV of the Complaint with respect to false advertising and Count V for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Date: October 5, 2023

/s/ Bryan S. Conley
John L. Strand (BBO No. 654985)
jstrand@wolfgreenfield.com
Bryan S. Conley (BBO No. 666830)
bconley@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000 Phone
617.646.8646 Fax

Robert T. Maldonado (admitted *pro hac vice*)
rmaldonado@wolfgreenfield.com
Aya Cieslak-Tochigi (admitted *pro hac vice*)
acieslak-tochigi@wolfgreenfield.com
JoHanna L. Rothseid (admitted *pro hac vice*)
jrothseid@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
212.697.7890 Phone
617.646.8646 Fax

*Counsel for Autry USA, LLC*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I certify that, on September 27, 2023, and October 3, 2023, counsel for Defendant Autry USA, LLC and counsel for Plaintiffs Reebok International Ltd., LLC and Reebok International Limited met and conferred in good faith regarding resolution of this motion. The parties were unable to resolve the issues raised in the present motion, but did come to an agreement on other issues regarding the scope of Plaintiffs' complaint (see footnote 1).

/s/ Bryan S. Conley
Bryan S. Conley

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/ Bryan S. Conley*
Bryan S. Conley