# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL LTD., LLC, and REEBOK INTERNATIONAL LIMITED,<br><br>              Plaintiffs,<br><br>      v.<br><br>AUTRY INTERNATIONAL S.r.l, and AUTRY USA, LLC,<br><br>             Defendants. | Case No. 1:23-cv-10966-RGS<br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM IN OPPOSITION TO DEFENDANT AUTRY USA, LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**LEGAL STANDARD** ........................................................................................................... **2**

   I.  Fed. R. Civ. P. 12(b)(2) ..................................................................................... 2

  II.  Fed. R. Civ. P. 12(b)(6) ..................................................................................... 3

**ARGUMENT** ...................................................................................................................... **3**

   I.  Autry USA's Rule 12(b)(2) Motion Should be Denied ...................................... 3

     A.  Autry USA Waived Its Personal Jurisdiction Challenge ............................... 3

     B.  This Court Has Specific Personal Jurisdiction Over Autry USA ................... 4

        1.  Autry USA's Sales to Bodega Create Specific Personal Jurisdiction ................... 5

        2.  Autry USA's Sales to National Retailers Create Specific Personal Jurisdiction .... 8

        3.  This Court's Personal Jurisdiction Over Autry USA is Reasonable .................... 10

  II.  Autry USA's Rule 12(b)(6) Motion Should be Denied .................................... 12

     A.  Reebok Pleaded Sufficient Facts to Support its False Advertising Claims ............... 12

        1.  Reebok has Sufficiently Pleaded Injury .................................................... 13

        2.  Reebok Sufficiently Pleaded Materiality and Deception ...................................... 16

     B.  Reebok Sufficiently Defined its Common Law Trademarks in Count V ................... 18

     C.  Dismissal with Prejudice is Improper ....................................................... 20

**CONCLUSION** ................................................................................................................ **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.,*
    812 F.3d 54 (1st Cir. 2016)........................................................................7

*Acushnet Co. v. Zimventures,*
    155 F. Supp. 3d 97 (D. Mass. 2015) .......................................................10

*Ahmed v. Hosting.com,*
    28 F. Supp. 3d 82 (D. Mass. 2014) .........................................................15

*Alpha Int'l, Inc. v. T-Reproductions, Inc.,*
    2003 WL 21511957 (S.D.N.Y. July 1, 2003) ......................................5, 7

*Andover v. Johnson & Johnson Consumer Inc.,*
    2017 WL 4953909 (D. Mass. July 25, 2017)..........................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................3, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................3, 14

*Bern Unlimited, Inc. v. Burton Corp.,*
    25 F. Supp. 3d 170 (D. Mass. 2014) ...............................................13, 14

*Cal. Brewing Co. v. 3 Daughters Brewing,*
    2016 WL 1573399 (E.D. Cal. Apr. 19, 2016)..........................................9

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,*
    284 F.3d 302 (1st Cir. 2002).............................................................13, 17

*Chouinard v. Marigot Beach Club & Dive Resort,*
    2021 U.S. Dist. LEXIS 104603 (D. Mass. June 3, 2021) ........................2

*Cisco Sys. Inc. v. Dexon Computer, Inc.,*
    541 F. Supp. 3d 1009 (N.D. Cal. June 1, 2021)....................................5, 7

*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.,*
    228 F.3d 24 (1st Cir. 2000).....................................................................16

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,*
    290 F.3d 42 (1st Cir. 2002).................................................................5, 7

*Doucet v. FCA US*,
    2020 WL 128655 (D. Mass. Jan. 10, 2020) ................................................................6

*Duarte v. Koki Holdings Am.*,
    2018 WL 6179511 (D. Mass Nov. 27, 2018) (Stearns, J.) ....................................10

*In re Elvis Presley Enters.*,
    50 U.S.P.Q.2d 1632 (T.T.A.B. 1999) .....................................................................20

*First Act v. Kids Station (U.S.)*,
    2006 WL 8458337 (D. Mass. Apr. 4, 2006) ...........................................................19

*Foman v. Davis*,
    371 U.S. 178 (1962) ...............................................................................................20

*In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*,
    76 F. Supp. 3d 279 (D. Mass. 2015) ......................................................................20

*Gary Scott Int'l, Inc. v. Baroudi*,
    981 F. Supp. 714 (D. Mass. 1997) ....................................................................5, 7, 9

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*,
    988 F.2d 476 (3d Cir. 1993) .....................................................................................7

*Greater Houston Trans. Co. v. Uber Techs., Inc. et al.*,
    2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) .......................................................14

*Hilsinger Co. v. Fbw Invs.*,
    109 F. Supp. 3d 409 (D. Mass. 2015) ...........................................2, 3, 5, 9, 10, 11

*iNebular, Inc. v. Deutsche Bank Trust Co. Ams.*,
    2023 WL 295952 (D. Mass. Jan. 17, 2023) .............................................................7

*In re Int'l Flavors & Fragrs.*,
    183 F.3d 1361 (Fed. Cir. 1999)..............................................................................20

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) (plurality opinion) ..................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).........................................................................................13, 15

*Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied
    Indus. Fund*,
    967 F.2d 688 (1st Cir. 1992)....................................................................................3

*McGrath & Co., LLC v. PCM Consulting, Inc.*,
    2012 WL 503629 (D. Mass. Feb. 15, 2012) ..........................................................14

*Media3 Techs., LLC v. CableSouth Media III, LLC*,
 17 F. Supp. 3d 107 (D. Mass. 2014) ...................................................................7

*MMM Healthcare, Inc. v. MCS Health Mgmt. Options*,
 818 F. Supp. 2d 439 (D.P.R. 2011)....................................................................3

*Motus, LLC v. CarData Consultants Inc.*,
 520 F. Supp. 3d 87 (D. Mass. 2021) ..................................................................7

*Nowak v. Tak How Invs.*,
 94 F.3d 708 (1st Cir. 1996)...............................................................................13

*Pegasystems, Inc. v. Appian Corp.*,
 424 F. Supp. 3d 214 (D. Mass. 2019) ..........................................................14, 17

*Roberts v. Legendary Marine Sales*,
 447 Mass. 860 (2006) .........................................................................................7

*Rodriguez v. Doral Mortg*,
 57 F.3d 1168 (1st Cir. 1995)..............................................................................19

*Rosenthal v. E. MPC Computs*,
 493 F. Supp. 2d 182 (D. Mass. 2007) ..........................................................11, 12

*Salem Shift LLC v. Buffalo Pedal Tours, LLC*,
 2023 U.S. Dist. LEXIS 165080 (D. Mass. Sep. 18, 2023) ..................................7

*Scruderi Grp., LLC v. LGD Tech., LLC*,
 575 F. Supp. 2d 312 (D. Mass. 2008) .................................................................8

*Sher v. Johnson*,
 911 F.2d 1357 (9th Cir. 1990) .............................................................................7

*Solomon v. Khoury*,
 2017 WL 598758 (D. Mass. Feb. 13, 2017) ......................................................15

*Stratus Techs. Bermuda. v. EnStratus Networks*,
 795 F. Supp. 2d 166 (D. Mass. 2011) ..............................................................5, 7

*Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc.*,
 946 F. Supp. 2d 182 (D. Mass. 2012) .................................................................7

*Susan McKnight. v. United Indus.*,
 273 F. Supp. 3d 874 (W.D. Tenn. 2017).............................................................9

*Sutra, Inc. v. Iceland Express*,
 2008 WL 2705580 (D. Mass. 2008) ..................................................................19

*In re the Upper Deck Co.*,
    59 U.S.P.Q.2d 1688 (T.T.A.B. 2001) ...................................................................20

*Village Farms, L.P. v. Mastronardi Produce Ltd.*,
    2014 WL 12492040 (W.D. Tex. Feb. 25, 2014) ....................................................14

*Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*,
    376 F.2d 543 (3d Cir. 1967) ...............................................................................4

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ........................................................................................18

FTC Act. 5 .................................................................................................................18

Lanham Act ........................................................................................................12, 18

Massachusetts General Laws Ch. 93A ................................................................11, 12

**Other Authorities**

16 C.F.R. § 323.2 ......................................................................................................18

Fed. R. Civ. P. 12(b)(2) ......................................................................................2, 3, 4

Fed. R. Civ. P. 15(a)(2) .............................................................................................20

Fed. R. Civ. P. 8 .................................................................................................13, 19

Fed. R. Civ. P. 12(b)(6) ..............................................................2, 3, 12, 15, 16, 20

United States Constitution ...........................................................................................2

Plaintiffs Reebok International Ltd., LLC and Reebok International Limited (collectively, "Reebok") filed the above-captioned case to stop Autry International S.r.l. ("Autry International") and Autry USA, LLC ("Autry USA") (together "Autry") from unfairly competing with Reebok by infringing upon Reebok's decades-old trademarks and deceiving consumers into thinking Autry's infringing products originate in the United States. Ultimately unable to defend its unlawful actions, Autry USA deflects by filing a motion to dismiss for purported lack of personal jurisdiction, or in the alternative, Reebok's supposed failure to sufficiently plead false advertising and define its common law marks. Each argument is unmeritorious; so is Autry USA's motion.

As discussed below, Autry USA waived its personal jurisdiction challenge by submitting extensive briefing to this Court that applies Massachusetts law and through its participation in a multi-hour, in-person evidentiary hearing. Even assuming *arguendo* it had not, Autry USA's motion actually **confirms** this Court has personal jurisdiction because Autry USA admits it sold at least 200 pairs of infringing shoes into Massachusetts last year to a key Massachusetts fashion retailer that also carries Reebok's shoes. In other words, despite challenging jurisdiction, Autry USA in the same breath confirms that it is purposefully engaging in the exact conduct at issue in this case in this forum, subjecting it to personal jurisdiction here. Autry USA solidifies that conclusion through its additional admission that Autry USA exists solely to create a nationwide market for the infringing shoes, which Autry USA sells to national retailers with both brick-and-mortar and online presences in Massachusetts. Although Autry USA's submission carefully characterizes these Massachusetts contacts in an effort to claim they are more akin to the inapposite cases Autry USA cites or too *de minimis* to count, these efforts are futile. When viewed against the body of law governing specific personal jurisdiction over non-forum based trademark defendants, Autry USA's Federal Rule of Civil Procedure ("Rule") 12(b)(2) challenge is baseless,

and its motion must be denied.[1]

The same result applies with respect to Autry USA's Rule 12(b)(6) challenges to Reebok's false advertising (Count III and part of Count IV) and common law infringement/unfair competition claims (Count V). As discussed below, Autry USA's arguments again rely upon inapposite cases as well as incomplete representations about Reebok's Complaint. When viewed against the liberal *Iqbal/Twombly* standard and all allegations in the Complaint, there is no question that Reebok has fully and fairly put Autry USA on notice of Reebok's claims. Autry USA has therefore failed to show dismissal is warranted, let alone dismissal with prejudice. Its alternative Rule 12(b)(6) motion should be denied.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(2)

Where, as here, "a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the prima facie standard governs" to determine whether the plaintiff has met its burden. *Hilsinger Co. v. Fbw Invs.*, 109 F. Supp. 3d 409, 416 (D. Mass. 2015). Under this standard, the Court must "constru[e] [facts] in the light most favorable to the plaintiff," and can "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.* (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002)). Although an exercise of personal jurisdiction over a defendant must comport with both the Massachusetts long-arm statute and due process under the United States Constitution, "[t]he Supreme Judicial Court has interpreted the long-arm statute as extending as

---

[1] Although the Court has sufficient facts to find jurisdiction over Autry USA, Reebok will file a separate motion to ask, in the alternative, for jurisdictional discovery. *See Chouinard v. Marigot Beach Club & Dive Resort*, 2021 U.S. Dist. LEXIS 104603, at *31 (D. Mass. June 3, 2021).

broadly as to the limits of constitutional due process." *Id.* at 420 (citations omitted). "Therefore, the relevant inquiry is the constitutional one." *Id.*

## II.     Fed. R. Civ. P. 12(b)(6)

A motion to dismiss must be denied where, as here, the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Importantly, claims are deemed to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "*Twombly* caution[s] against thinking of 'plausibility as a standard of likely success on the merits'; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *MMM Healthcare, Inc. v. MCS Health Mgmt. Options*, 818 F. Supp. 2d 439, 446 (D.P.R. 2011) (citation omitted).

## **ARGUMENT**

## I.      Autry USA's Rule 12(b)(2) Motion Should be Denied

### A.      Autry USA Waived Its Personal Jurisdiction Challenge

"The Supreme Court has held that both venue and personal jurisdiction are personal privileges which may be waived." *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691 (1st Cir. 1992). Applying that well-settled rule, the First Circuit has held that a defendant waived its defense when it raised a venue challenge only after it filed a stipulation with the Court, "submitted to the jurisdiction of the court by twice requesting hearings on the plaintiff's' motions," and filed motions "to permit the defendants' New York attorneys to appear in this court pro hac vice." *Id.* at 692 (quotation marks and citation omitted). Similarly, in a decision the First Circuit cited with approval in *Manchester*, the Third Circuit has likewise held that a defendant who participates in a "vital proceeding" without raising

a personal jurisdiction challenge, including one that "resolves factual disputes" but is not necessarily "determinative of the ultimate results of the litigation, must be deemed to have waived the defense of lack of personal jurisdiction." *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (involving an injunction *pendente lite*).

Applying those principles here, Autry USA has waived its personal jurisdiction challenge. Without even including Autry USA's many *pro hac vice* motions, the docket confirms Autry USA filed no less than five motions before the instant personal jurisdiction challenge. *See* Dkt. 17 (motion for extension of time); Dkt. 32 (same); Dkt. 71 (same); Dkt. 33 (motion to stay); Dkt. 44 (motion to continue hearing and for leave to permit Autry's foreign witnesses to testify via video conference). Autry USA also participated in a multi-hour, in-person evidentiary hearing where it not only submitted to this Court's jurisdiction to decide a "vital" issue of whether Autry USA's initially selected counsel could represent Autry USA in this case, but Autry USA actually argued the merits of the disqualification issue in multiple briefs and orally before this Court based on the Massachusetts code of ethics—ethics that would only apply if Autry USA's non-Massachusetts based attorneys would be litigating the merits of the dispute in this Court. At no point in its multiple filings or the in-person evidentiary hearing did Autry USA challenge this Court's jurisdiction over it. Autry USA has therefore waived its personal jurisdiction challenge, and its Rule 12(b)(2) motion should be denied for this reason alone.

**B.     This Court Has Specific Personal Jurisdiction Over Autry USA**

Even if the Court determines it needs to address Autry USA's personal jurisdiction challenge on the merits, Autry USA's Rule 12(b)(2) motion must still be denied. A Massachusetts court will exercise specific personal jurisdiction over an out-of-state defendant where (1) the "claim underlying the litigation directly arise[s] out of, or relate[s] to, the defendant's forum-state activities," (2) the defendant's in-state contacts are purposeful, and (3) the exercise of personal

jurisdiction is reasonable under the circumstances. *Daynard*, 290 F.3d at 61 (citation omitted); *see also Hilsinger*, 109 F. Supp. 3d at 421. Applying that standard here, Autry USA is plainly subject to specific personal jurisdiction in this forum.

## 1. Autry USA's Sales to Bodega Create Specific Personal Jurisdiction

Reebok's Complaint alleges (among other things) that Autry USA is infringing three of Reebok's decades-old trademarks and engaging in unfair competition/deceptive trade practices by selling and advertising Autry's infringing shoes throughout the United States. *See generally* Dkt. 1. In a declaration attached to its motion, Autry USA admits it has shipped 200 pairs of those infringing shoes "to one [brick-and-mortar] retailer located in Massachusetts, Bodega LLC" pursuant to two sales contracts obtained approximately nine to ten months ago. Dkt. 77, ¶ 6. This admission is more than sufficient to satisfy the requirement that Reebok's claims arise out of, or are related to, Autry USA's contacts with this forum, and the requirement that Autry USA has purposefully directed its activities towards or availed itself of the ability to do business within, this forum. *See, e.g.*, *Stratus Techs. Bermuda. v. EnStratus Networks*, 795 F. Supp. 2d 166, 168 (D. Mass. 2011) (jurisdiction over trademark defendant where the defendant had 361 attempted infringing sales in Massachusetts, even though it ultimately supplied infringing services to 5 individuals); *Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714, 716 (D. Mass. 1997) (jurisdiction over trademark defendant where infringing products were advertised online and twelve (12) infringing products were sold to a Massachusetts retailer); *see also Cisco Sys. Inc. v. Dexon Computer, Inc.*, 541 F. Supp. 3d 1009, 1017 (N.D. Cal. June 1, 2021) (jurisdiction over a trademark defendant where 60 counterfeit products were sold); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 WL 21511957, at *5 (S.D.N.Y. July 1, 2003) (jurisdiction over a trademark defendant where, among other things, the defendant sold 143 infringing products into the forum over 3 years). In fact, Autry USA's business dealings with Bodega reveal Autry USA's intentional efforts to use

one of the most influential sneaker boutiques in Massachusetts to create awareness about and build brand legitimacy in Autry's infringing shoes among U.S. consumers in Massachusetts and nationwide. McQueen Decl. ¶¶ 9-10. Its targeting and business dealings with Bodega likewise underscore the harm Autry is causing Reebok in Massachusetts, as Bodega is, and has been for a long time, a key fashion retailer for Reebok, and Autry USA's actions mean that its infringing shoes are now being sold side-by-side with Reebok's in this important Massachusetts-based retailer. McQueen Decl. ¶ 11 & Ex. B. Autry USA's admitted forum-directed conduct is therefore more than enough to create jurisdiction over it. *See, e.g.*, *Doucet v. FCA US*, 2020 WL 128655, at *6 (D. Mass. Jan. 10, 2020) (jurisdiction where the defendant "purposefully availed itself of the privilege of conducting activities in Massachusetts by partnering with an in-forum distributor," which "sells FCA's products and conducts its own business under FCA's brand names").

Autry USA does not seriously challenge that the relatedness prong is met in this case. *See generally* Dkt. 76. Instead, Autry USA asserts only two arguments contesting whether Autry USA's admitted contacts with Massachusetts are sufficient to find purposeful availment. Each fail.

First, Autry USA attempts to distract from its admitted sales into this forum by stating that the contract with Bodega was procured by a company called PlusPlus on Autry USA's behalf. Dkt. 76, at 9; Dkt. 77, ¶ 6. This is a distinction without a point. By Autry USA's own admission, PlusPlus was acting as "Autry USA's exclusive sales representative" when it procured those sales, and Autry USA is the party that actually "fulfilled those orders" by shipping 200 pairs of shoes directly into Massachusetts. Dkt. 77, ¶ 6. PlusPlus was therefore acting as Autry USA's agent and its contacts with Massachusetts created through the soliciting, negotiating, and executing of a contract with Bodega—a Massachusetts entity—for the sale and shipment of 200 pairs of infringing shoes are imputed to Autry USA for purposes of personal jurisdiction. *See, e.g.*,

*Daynard*, 290 F.3d at 55 ("[F]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal"); *iNebular, Inc. v. Deutsche Bank Trust Co. Ams.*, 2023 WL 295952, at *3 (D. Mass. Jan. 17, 2023) (same); *see also*; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) (same); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (same). Thus, far from minimizing its contacts with Massachusetts, Autry USA's disclosure of PlusPlus underscores the appropriateness of jurisdiction over Autry USA in this case.

Second, Autry USA argues that its sale of 200 units into Massachusetts is "a far cry from *substantial and regular activities*," seemingly contending that there is a threshold number of sales that must be made before ***specific*** personal jurisdiction attaches. Dkt. 76, at 9. That is wrong. Courts routinely find specific personal jurisdiction complies with due process (and exists under the Massachusetts long-arm statute which is coextensive) in cases involving forum-targeted sales volumes far below what Autry USA admits here.[2] *E.g.*, *Stratus*, 795 F. Supp. 2d at 168 (5 actual sales out of 361 attempted); *Gary Scott*, 981 F. Supp. at 716 (12 units sold to a Massachusetts based retailer); *Cisco Sys.*, 541 F. Supp. 3d at 1017 (60 counterfeit products sold); *T-Reproductions*, 2003 WL 21511957, at *5 (143 items bearing the infringing marks sold over 3 years); *see also Salem Shift LLC v. Buffalo Pedal Tours, LLC*, 2023 U.S. Dist. LEXIS 165080, at *12-14 (D. Mass. Sep. 18, 2023) (jurisdiction from a single bicycle sale because a contract was

---

[2] None of Autry USA's cited cases support a contrary conclusion. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 875 (2011) (plurality opinion) (no personal jurisdiction in a products liability case where the manufacturer neither "marketed goods in the State [n]or shipped them there"); *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016) (finding no personal jurisdiction where the only contact with the forum was a website); *Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182 (D. Mass. 2012) (same); *Media3 Techs., LLC v. CableSouth Media III, LLC*, 17 F. Supp. 3d 107, 109 (D. Mass. 2014) (same); *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 90 (D. Mass. 2021) (same); *Roberts v. Legendary Marine Sales,* 447 Mass. 860 (2006) (involving breach of contract and warranty claims for the sale of a single boat where the defendant did not sign the contract in Massachusetts or deliver the boat).

formed through multiple discussions with a Massachusetts company); *Scruderi Grp., LLC v. LGD Tech., LLC*, 575 F. Supp. 2d 312, 318-19 (D. Mass. 2008) (collecting cases and explaining that "'even an isolated, one-shot transaction with little impact on the commerce of the Commonwealth may constitute transacting business.'" (citation omitted)). Moreover, trademark infringement need not be "substantial and regular" to be actionable. If the 200 Massachusetts targeted sales were Autry USA's only infringing activity, Reebok would still have a claim. If that forum-targeted conduct alone is sufficient to establish liability, it can certainly support jurisdiction. Autry USA's own declaration therefore proves the Court has jurisdiction. Its motion should be denied.

### 2. Autry USA's Sales to National Retailers Create Specific Personal Jurisdiction

Although Autry USA's admitted sales into Massachusetts are sufficient to find specific personal jurisdiction, Autry USA is also subject to jurisdiction for the independent reason that Autry USA sells the infringing products to national retailers with the intent to develop a national market. Specifically, Autry USA's declaration concedes that, as Autry International's licensee, Autry USA is tasked with marketing, selling, and distributing the infringing shoes to U.S. retailers. Dkt. 77, ¶ 5. Autry USA does not allege, however, that it purposefully avoids U.S. retailers with online or physical presences in Massachusetts. *See generally id.* Nor does Autry USA contend that it instructs U.S. retailers not to distribute or sell Autry's infringing products to consumers located in Massachusetts. *See generally id.*

Reebok's Complaint, on the other hand, alleges that Autry sells its infringing products to national U.S. retailers, including companies like Nordstrom, Neiman Marcus, and Saks Fifth Avenue, each of which have a presence in Massachusetts. Dkt. 1, ¶ 102; *see also* McQueen Decl. ¶¶ 6-8 & Ex. A. It likewise attaches exhibits that show it is Autry's intent to create a national market for its infringing shoes, to the extent one does not already exist. *See* Dkt. 1-8, at 2 ("Autry

announces it will hit stores across the U.S. . . stocking at some of the country's most prestigious department stores including Nordstrom, Saks Fifth Avenue and Neiman Markus.").

Applying these facts to the specific personal jurisdiction inquiry, Autry USA's sale of infringing shoes to national retailers satisfies the relatedness prong of specific personal jurisdiction. Courts within this district and others have likewise found these actions sufficient to constitute purposeful availment under the various stream of commerce tests created by the Supreme Court of the United States. *See, e.g.*, *Hilsinger*, 109 F. Supp. 3d at 425 (jurisdiction over Arizona trademark defendant in Massachusetts where the defendant sold "finished products to national retailers" and "intend[ed] for its product to be sold wherever [the national retailers] have stores and wherever [the online retailers] sell[] to consumers—including Massachusetts"); *id.* at 426-27 (collecting cases and explaining that out-of-state defendant's "sales to national retailers reveal[ed] a specific intent to target those states in which the national retailers do business"); *Gary Scott*, 981 F. Supp. at 716 (decision to "market and sell . . . nationwide" made it likely the defendant "could be hauled into Court in a foreign state"); *see Cal. Brewing Co. v. 3 Daughters Brewing*, 2016 WL 1573399, at *5 (E.D. Cal. Apr. 19, 2016) (jurisdiction where "defendants sold their goods to national retailers with the intent to develop a national market").

Autry USA's admission that it sells to U.S. retailers—coupled with Reebok's allegations that those retailers include multiple large companies with national presences, and brick-and-mortar locations in Massachusetts—therefore provides an independent basis to find the first two prongs of specific jurisdiction satisfied. *See, e.g.*, *Hilsinger*, 109 F. Supp. 3d at 425 (jurisdiction over defendant with no operations, offices, assets, or employees in Massachusetts, where the defendant indirectly sold infringing products in Massachusetts through national retailers); *see also Susan McKnight. v. United Indus.*, 273 F. Supp. 3d 874, 886-87 (W.D. Tenn. 2017) (explaining that

"lower courts addressing patent issues have found that when a defendant utilizes third-party distributors—like Home Depot and Amazon—who sell the accused product into a forum, the defendant has purposefully availed itself [and satisfied the applicable Supreme Court tests]"); *Acushnet Co. v. Zimventures*, 155 F. Supp. 3d 97, 105 (D. Mass. 2015) (jurisdiction where patent defendant "'established a national channel of distribution in the United States, including Massachusetts' by making its allegedly infringing products available for sale on golfballs.com, an 'authorized dealer' of [the defendant's] products"); *Duarte v. Koki Holdings Am.*, 2018 WL 6179511, at *3 (D. Mass Nov. 27, 2018) (Stearns, J.) (jurisdiction based in part on the defendant's sale of power tools to "Lowe's, a national distribution center," and citing *Hilsinger* with approval).

### 3.     This Court's Personal Jurisdiction Over Autry USA is Reasonable

With both its directed sales into Massachusetts as well as its unrestricted sales to national retailers demonstrating relatedness and purposeful availment, the Court should exercise jurisdiction over Autry USA unless doing so would be unreasonable. *Hilsinger*, 109 F. Supp. at 421, 429 (citations omitted). Importantly, Autry USA does not argue that an exercise of personal jurisdiction over it is unreasonable. *See generally* Dkt. 76. Nor can it.

Reasonableness is measured under the five "gestalt factors" outlined by the Supreme Court in *Burger King v. Rudzewicz*, each of "which bear upon the fairness of subjecting nonresidents to this Court's jurisdiction." *Hilsinger*, 109 F. Supp. 3d at 429 (citing 471 U.S. 462, 477 (1985)). Those factors include: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id*. Applying that

framework here, Massachusetts is a reasonable forum for this dispute.[3]

To start, for the first "factor to have any significance, 'the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way.'" *Id.* (quoting *Nowak v. Tak How Invs*., 94 F.3d 708, 718 (1st Cir. 1996)). Autry USA has made no such argument or demonstration here. Nor can it. There is no significant hardship in requiring Autry USA to defend itself in this forum in any event, but particularly when it has already done so in an in-person hearing before this Court and its parent company/co-defendant will be defending itself in this forum too.

By contrast, there is no question that the second, third, and fourth factors weigh strongly in favor of jurisdiction here. Reebok's principal place of business is in this forum. Massachusetts unquestionably has an interest in "providing its residents with a convenient forum for redressing injuries," and more specifically, in "adjudicating a trademark violation involving a Massachusetts business." *Id*. (citations omitted). Autry USA has also conceded in briefing that Massachusetts' law governs, and Massachusetts law clearly governs Reebok's Ch. 93A claim. *See, e.g.*, Dkt. 38; Dkt. 44; Dkt 76. This too confirms Massachusetts has a strong interest in resolving this case. *See, e.g.*, *Rosenthal v. E. MPC Computs*, 493 F. Supp. 2d 182, 198 (D. Mass. 2007).

Reebok's decision to seek protection of its rights in its home forum is itself entitled to significant deference and should not be disturbed absent a strong showing of need. *Hilsinger*, 109 F. Supp. at 430. And the most effective resolution for the instant lawsuit is to move forward with this case in Massachusetts because "the harm to [Reebok] is in Massachusetts, where it has its principal place of business," and Autry USA's parent company and co-defendant—Autry International—is unquestionably subject to jurisdiction in this forum and will be required to defend

---

[3] The fifth factor is neutral in this case.

against the same allegations asserted against Autry USA in this Court.[4]  *See, e.g.*, *Rosenthal*, 493 F. Supp. 2d at 198 ("Massachusetts is clearly the most convenient forum for Plaintiff, in particular because the case against [a co-defendant] will obviously remain here.").  With all applicable gestalt factors supporting reasonableness, the Court can and should exercise jurisdiction over Autry USA.

## II.  Autry USA's Rule 12(b)(6) Motion Should be Denied[5]

Unable to obtain dismissal for lack of personal jurisdiction, Autry USA moves in the alternative to dismiss the portions of Count III and IV that assert false advertising, and Count V to the extent it asserts common law infringement of/unfair competition based on Reebok's unregistered trademarks.  Dkt. 76, at 13-20.  In doing so, however, Autry USA fails to identify any pleading deficiency to support its dismissal request, let alone one that would support dismissal with prejudice.  For the reasons that follow, Autry USA's Rule 12(b)(6) motion should be denied.

### A.  Reebok Pleaded Sufficient Facts to Support its False Advertising Claims

Reebok's Complaint asserts claims for false advertising in violation of the Lanham Act (Count III) and in violation of Ch. 93A of the Massachusetts General Laws (Count IV) based on Autry USA's false and misleading statements that Autry's products are made and/or originate in the United States.[6]  *See, e.g.*, Dkt. 1, ¶¶ 94, 140-144, 145-150.  To state a claim for false advertising under either statute, Reebok need only allege facts that make it plausible that Autry USA has (1) "made a false or misleading description of fact or representation of fact in a commercial advertisement about" its products; (2) "the misrepresentation is material, in that it is likely to

---

[4] Autry USA was able to avoid this simple point when filing its motion because, despite Reebok's diligence, Autry International had yet to be served and was refusing to accept service at that time.

[5] Although Autry is right that the Complaint does not assert infringement of the Vector Logo or trade dress infringement, *see* Dkt. 76, at 1 n.1, Reebok reserves all rights to assert those claims.

[6] While Count III is limited to allegations of false advertising, Count IV is not.  In addition to a false advertising in violation of Ch. 93A, Count IV alleges violations of that chapter based on Autry's infringement of Reebok's trademarks.  *See* Dkt. 1, ¶¶ 145-150.  Accordingly, regardless of how this Court resolves this motion, Count IV cannot be dismissed in its entirety.

influence the purchasing decision;" (3) "the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;" (4) Autry USA has "placed the false or misleading statement into interstate commerce;" and (5) Reebok "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002). Autry USA does not contest the majority of these elements. *See* Dkt. 76, at 14-19. It argues only that Reebok failed to plead injury or that Autry USA's statements deceive consumers as to a material issue. Both arguments are meritless.

### 1. Reebok has Sufficiently Pleaded Injury

To adequately plead injury in satisfaction of Rule 8, Reebok need only allege that it will suffer "economic or reputational injury flowing from the deception wrought by [Autry's] advertising," which may (but need not) include harm caused "when deception of consumers causes them to withhold trade from [Reebok]." *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 184 (D. Mass. 2014); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Here, Autry USA concedes—as it must—that Reebok's Complaint specifically alleges those exact facts: that Autry USA's false advertising is "harming and undermining Reebok's competitive position" as well as causing "the loss of goodwill and the loss of current and prospective customers of Reebok who, but for the false and misleading advertisements and statements made by Autry, would conduct business with Reebok or its authorized licensees." Dkt. 76 at 15; *see also* Dkt. 1, ¶¶ 144, 148. Autry USA nevertheless argues these allegations are insufficient to satisfy Reebok's Rule 8 burden, and that the Complaint purportedly fails to plead "***how*** Autry USA's use of the American flag indicia has caused or is causing injury ***to Reebok specifically***." Dkt. 76, at 15-16 (emphasis in original). Both arguments are meritless.

To start—and in direct contradiction of Autry's arguments—courts in this district (and

others) routinely find that allegations similar to those in Reebok's Complaint sufficiently plead false advertising. *See, e.g.*, *McGrath & Co., LLC v. PCM Consulting, Inc.*, 2012 WL 503629, at *7 (D. Mass. Feb. 15, 2012) (denying a motion to dismiss because allegation that "harm 'includes but is not limited to, the loss of [its] right to fairly compete in the marketplace and the loss of jobs which it would have obtained but for [the] false statements and misrepresentations" was "sufficient to support the reasonable inference that [the plaintiff] was harmed or is likely to be harmed"); *Pegasystems, Inc. v. Appian Corp.*, 424 F. Supp. 3d 214, 224 (D. Mass. 2019) (denying a motion to dismiss based on allegations that the advertising was "likely to divert those customers from [the plaintiff] to [the defendant]"); *Andover v. Johnson & Johnson Consumer Inc.*, 2017 WL 4953909, at *1 (D. Mass. July 25, 2017) (denying a motion to dismiss where "[t]he Complaint, while terse," contained factual support and noting that the plaintiffs were "not required to prove their case in the complaint"); *Bern*, 25 F. Supp. 3d at 184 (denying a motion to dismiss based on allegations that false advertising increased defendant's sales while decreasing the claimant's); *see also Greater Houston Trans. Co. v. Uber Techs., Inc. et al.*, 2015 WL 1034254, at *8 (S.D. Tex. Mar. 10, 2015) (pleading burden met with allegations that "customers were induced by false advertising to offer their business to Plaintiffs' competitors instead of Plaintiffs" without the need to "offer[] the precise amount of business they have lost" or to "prove that their harms were not wholly or in part the result of natural market factors"); *Village Farms, L.P. v. Mastronardi Produce Ltd.*, 2014 WL 12492040, at *2 (W.D. Tex. Feb. 25, 2014) (denying a motion to dismiss where the plaintiff identified a false statement, alleged consumers were deceived and relied upon those statements to purchase the defendant's products, and that the sale gave the defendant an unfair market advantage while hurting the plaintiff's reputation and stating that "*Twombly* and *Iqbal* do not 'require heightened pleading of specifics, but only enough facts to state a claim to relief that is plausible'"

(quoting *Twombly*, 550 U.S. at 570)). This alone defeats the motion.

Yet, Autry USA's arguments are also belied by the significant portions of Reebok's Complaint that Autry USA simply ignores. For example, Reebok's Complaint contains detailed allegations regarding competition between Reebok's business and Autry USA's business. *See* Dkt. 1, ¶¶ 89-103, 108, 155. It also contains detailed allegations regarding the competitive harm that Autry USA's actions are causing Reebok, including the diversion of sales from Reebok to Autry USA. *See* Dkt. 1, ¶¶ 104-122, 144, 148. All of these allegations are incorporated into Counts III and IV. *See* Dkt. 1, ¶¶ 139, 145. They more than provide the factual underpinnings for Reebok's injury allegations, which again requires Autry USA's motion be denied.

Autry USA cannot avoid that conclusion by claiming that its two cited cases *Solomon v. Khoury*, 2017 WL 598758 (D. Mass. Feb. 13, 2017), and *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82 (D. Mass. 2014), are "akin" to Reebok's Complaint.[7] Dkt. 76, at 16. They are not. Unlike here, both of those cases involved complaints filed by *pro se* plaintiffs that contained serious deficiencies. For example, *Ahmed* involved a complaint that failed to plead even basic facts that would allow the court to identify what kind of business the plaintiff operated, the products he offered, or how either his products or businesses were impacted by the defendant's actions. 28 F. Supp. 3d at 89. Similarly, *Solomon* involved a complaint that did not plead any specific misrepresentations, identify the products at issue, or allege loss of sales as a result of the false advertising. 2017 WL 598758, at *4. Reebok's Complaint is therefore not akin to those cases; it is the antithesis of them, containing over 283 pages that more than sufficiently plead that Autry USA

---

[7] Autry USA's reliance on *Ferring* and *Lexmark* do not change this conclusion. *Ferring* involved cross-motions for summary judgment, not a Rule 12(b)(6) challenge, and in any event, the court found that the false advertising claims should survive trial. 221 F. Supp. 3d 161, 167, 171 (D. Mass. 2016). *Lexmark* likewise did not involve a Rule 12(b)(6) challenge; it set forth the test for false advertising standing—which Reebok possesses here. 572 U.S. at 129.

is a competitor of Reebok and that Autry USA's unlawful conduct is causing, and will continue to cause, Reebok economic and reputational harm until it stops. The motion should be denied.

### 2. Reebok Sufficiently Pleaded Materiality and Deception

Perhaps knowing its injury challenge lacks merit, Autry USA argues in the alternative that Reebok's false advertising claims should be dismissed for failure to plead facts that support materiality and deception. Specifically, Autry USA posits that, because Reebok supposedly does not allege Autry USA's statements are literally false, Reebok had to plead consumer deception and materiality but purportedly did not. Dkt. 76, at 17. Autry USA is, again, wrong.

To start, Autry USA is incorrect that Reebok's Complaint does not contain allegations of literal falsity. Contrary to Autry USA's suggestion otherwise, allegations of literal falsity can be supported by necessary implication where, "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000) (citations omitted). Relying on those principles, Reebok's Complaint alleges that Autry USA makes literally false representations about the geographic origin of its products through widespread use of American flag indicia both on its products and their packaging. *See, e.g.*, Dkt. 1, ¶ 94 (alleging that Autry's use of the American flag "attempts to mislead consumers into believing that the shoes they are purchasing are made in the United States, when in fact that notion is materially false"). Accepting Reebok's allegations as true, Reebok has unquestionably pleaded sufficient facts to support a plausible inference that, when viewed as a whole, consumers will falsely believe that Autry USA's widespread use of the American flag conveys by necessary implication the literally false claim that Autry USA's products are made and/or originate in the United States, when they do not. Any challenge by Autry USA to the contrary is a fact dispute that is improper under Rule 12(b)(6). *See Clorox*, 228 F.3d at 35 (explaining that, on a motion to dismiss, the court is "not required to

determine what claim was actually conveyed by the advertisements because [it is] not [a] factfinder[];" instead, the court "must evaluate whether the complaint, as supplemented by the advertising copy, alleges facts that would allow a rational factfinder to conclude that [the defendant's] advertisements make a [literally false] claim either explicitly or by necessary implication"). The Court should therefore reject Autry USA's arguments to the contrary.[8]

The Court can and should do the same with Autry's challenge that Reebok has failed to sufficiently plead consumer deception. To start, consumer deception is presumed in cases of literal falsity. *Cashmere*, 284 F.3d at 311. Autry USA's challenge is therefore inapplicable to those claims. Autry USA's challenge to Reebok's "materially misleading" claims fare no better. Autry USA admits—as it must—that Reebok's Complaint alleges facts to support that Autry USA's misleading statements cause consumer deception. Dkt. 76, at 18; *see also* Dkt. 1, ¶ 143. Autry USA nevertheless argues Reebok's Complaint is purportedly deficient because Reebok does not claim Autry USA's statements have a tendency to deceive a substantial segment of Autry USA's customers and Reebok does not "identif[y] any specific consumers that have been deceived." Dkt. 76, at 18. Autry USA's first argument is belied by the Complaint itself. Dkt. 1, ¶¶ 94, 143 (alleging intentional deception of consumers). And its second argument is contradicted by its own cases, which recognize there is no requirement to plead, let alone prove, actual deception. *Pegasystems*, 424 F. Supp. 3d at 223 (quoting *Clorox*, 228 F.3d at 37 n.11, to explain that consumer deception is often proven through surveys and that a plaintiff need not have a survey at the pleading stage).

Third and finally, Autry USA's claim that Reebok failed to plead facts to support materiality falls flat. Again, Reebok's Complaint alleges that "consumers are likely to rely on

---

[8] The same is true with respect to Autry USA's claim that Reebok has not pleaded that Autry USA is acting with an intent to deceive. Reebok alleges intentional deception. *See, e.g.*, Dkt. 1, ¶ 94.

Autry's misrepresentations regarding the origins of its shoes in deciding whether to buy Autry's products." Dkt. 1, ¶ 143. It is well established that false claims that products originate in the United States are actionable and material under the Lanham Act and are deemed an unfair trade practice under the FTC Act. 5 McCarthy on Trademarks and Unfair Competition § 29:54 (5th ed.) (citing cases); see also 16 C.F.R. § 323.2. The Lanham Act itself likewise acknowledges the materiality of false geographic origin claims, identifying explicitly "false or misleading representations" regarding "geographic origin" as grounds for liability. 15 U.S.C. § 1125(a)(1)(B). Autry's suggestion that Reebok need allege more to plead materiality in support of a false U.S. origin claim is therefore contradicted by the law. Its motion should be denied.

### B.    Reebok Sufficiently Defined its Common Law Trademarks in Count V

Autry USA's final argument seeks dismissal of Reebok's common law trademark infringement/unfair competition claims (Count V) based on the incorrect argument that Reebok did not describe its common law marks "beyond circling portions of different looking shoes." Dkt. 76, at 19. This argument is dubious at best with respect to the Stripecheck Mark, which is both a *registered* and common law mark. Autry USA's complaints that it does not have adequate notice as to the scope of all three marks is also unsupportable, given that Reebok provided clear testimony on these points during the prior evidentiary hearing. Dkt. 54-1 at 16:16-17:7.

Regardless, the Court need look no further than the first paragraphs of Reebok's Complaint to reject this argument. In addition to the dozens of visual representations Reebok provides, those initial paragraphs—which Autry USA simply ignores—*explicitly describe* Reebok's three marks:

- Paragraph 4 defines Reebok's iconic Window Box Mark as consisting of "an elongated rectangular inset box that Reebok has consistently used as a source identifier in connection with upwards of 250 shoe lines in the United States since at least as early as 1981," (Dkt. 1, ¶ 4);

- Paragraph 5 defines Reebok's well-established Stripecheck Mark by not only referring to

Reebok's two incontestable federal trademark registrations (U.S. Reg. Nos. 1,196,293 and 1,831,392) but also by explaining that it consists "of a stylized cross-check overlapping intersecting stripes" that Reebok "has consistently used as a source identifier in connection with upwards of 270 shoe lines in the United States for decades" (*id.* ¶ 5); and

- Paragraph 6 defines Reebok's well-known Crosscheck Mark as Reebok's "stylized cross-check that Reebok has consistently used as a source identifier in connection with upwards of 230 shoe lines in the United States since at least as early as 1970" (*id.* ¶ 6).

Perhaps sensing that these descriptions are fatal to its motion, Autry USA does not just ignore them but goes so far as to posit a series of dubious "questions" in its brief—such as whether the Window Box includes in the REEBOK Union Jack Mark, whether the Crosscheck Mark includes the Window Box, and whether the Stripecheck Mark includes the Window Box and Crosscheck Marks, Dkt. 76, at 19-20—even though every single one of those questions is answered by the definitions Reebok provides in the Complaint. Dkt. 1, ¶¶ 4-6; *see also id.* ¶¶ 75-76 (stating that, although the REEBOK Union Jack Mark is sometimes used in tandem with the Window Box Mark, the Window Box Mark does not require any particular designation within it). Autry's questions on these points are answered by the Complaint, and they can seek further clarification in discovery.

Finally, Autry USA could not find a ***single case*** to support its claim that Reebok's trademark definitions fail to satisfy Rule 8. In fact, several of Autry USA's cited cases do not even involve trademarks. *See Sutra, Inc. v. Iceland Express*, 2008 WL 2705580 (D. Mass. 2008) (trade secrets); *Ferring*, 38 F. Supp. 3d at 175 (same for cited portion); *Rodriguez v. Doral Mortg*, 57 F.3d 1168 (1st Cir. 1995) (sexual harassment). Autry USA's trade dress case is inapposite because, unlike here, that case involved five different definitions for a single trade dress. *First Act v. Kids Station (U.S.)*, 2006 WL 8458337 (D. Mass. Apr. 4, 2006). And the three trademark cases all involved USPTO refusing registration because the party seeking to register the mark was admittedly trying to register multiple marks as part of a single application, in violation of the one

mark per application rule—a doctrine that has no application here. *See, e.g.*, *In re Int'l Flavors & Fragrs.*, 183 F.3d 1361 (Fed. Cir. 1999); *In re the Upper Deck Co.*, 59 U.S.P.Q.2d 1688 (T.T.A.B. 2001); *In re Elvis Presley Enters.*, 50 U.S.P.Q.2d 1632 (T.T.A.B. 1999).

Simply put, if Autry USA's claim that Reebok needs to define its common law trademarks with greater specificity held any water, Autry USA would have had no trouble finding authority to support that point. Its failure to do so is telling. Its motion should be denied.

### C.     Dismissal with Prejudice is Improper

Even if the Court credits any of Autry USA's Rule 12(b)(6) arguments, Autry USA's request that Reebok's claims be dismissed with prejudice is improper. *See* Dkt. 75, at 2. Dismissal with prejudice is appropriate only where a claim's defect is irremediable, such as "where there is no basis in law for this plaintiff to bring this particular claim against this defendant (even if properly pleaded), or where the statute of limitations clearly precludes the claim, and refiling could do nothing to cure the infirmity." *See In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 279, 288 (D. Mass. 2015). Conversely, where a complaint's deficiency is remediable, dismissal should be without prejudice and leave to amend should be allowed. *Id.*; Fed. R. Civ. P. 15 (a) (2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits" and therefore leave to amend).

Here, where Reebok has various bases in law for bringing its claims, where any perceived deficiencies in its pleadings are remediable, and where there are no allegations of dilatory motive or undue prejudice to defendants, Reebok's Complaint should not be dismissed with prejudice and Reebok should be permitted leave to amend its complaint accordingly.

### **CONCLUSION**

For at least the reasons above, Autry USA's Motion to Dismiss should be denied.

Dated: October 19, 2023

Respectfully Submitted,

REEBOK INTERNATIONAL LTD., LLC, and
REEBOK INTERNATIONAL LIMITED,

By their attorneys,


/s/ *Lucy J. Wheatley*
Lucy J. Wheatley (admitted pro hac vice)

John J. Tumilty (BBO # 560017)
Paige Zacharakis (BBO # 699108)
**MORSE, BARNES-BROWN &
PENDLETON, P.C.**
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Telephone: (781) 622-5930
Fax: (781) 622-5933
jtumilty@morse.law
pzacharakis@morse.law

Lucy J. Wheatley (admitted pro hac vice)
Amanda L. DeFord (admitted pro hac vice)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 698-2016
lwheatley@mcguirewoods.com
adeford@mcguirewoods.com

Luigi Aletto (admitted pro hac vice)
**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102
Tel: (703) 712-5000
Fax: (703)712-5050
laletto@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2023, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

*/s/ Lucy J. Wheatley*
Lucy J. Wheatley (admitted pro hac vice)